# Funk *v.* Van Swearingen.

*Mandamus—Supreme Court—Refusal of Common Pleas Court to file order made—Allowance of writ by Supreme Court.*

1. A petition filed in the Supreme Court for a writ of mandamus against the president judge of a Court of Common Pleas to compel him to file certain opinions and orders, averred that the petitioner, an unsecured creditor of a certain debtor whose property had been placed in the hands of receivers by order of the said Common Pleas Court, had filed an application in said court for leave to bring suit against such debtor; that on June 12, 1915, the respondent announced that he had prepared an opinion and orders in the matter of petitioner's and other creditors' applications, and by unanimous consent of counsel interested September 14, 1915, was fixed as the date when the orders should be filed; that on September 11th the respondent announced in open court that there would be a delay in filing the opinion and orders until March 14, 1916, such action having been taken against the objections of the petitioner but at the instance of the other parties in interest. The respondent was at the time the sole judge of the courts. The respondent filed an answer to the effect that the estate of the debtor in question was greatly involved and had necessitated receiverships of twelve other estates, amounting in all to one hundred million dollars; that the interest of the petitioner and other creditors would be best preserved by a delay in the filing of the orders; and that all parties interested, with the exception of the petitioner, had consented to such delay. *Held,* the answer was insufficient and the petitioner was entitled to the writ of mandamus as prayed for.

2. In such case a petition to the Supreme Court by a number of the members of the bar of the county, a number of whom were interested personally as creditors of the estate in question, alleging that in the event of the lower court being ordered to file the opinion and orders, similar action would have to be taken where other petitioners who were creditors of the estate and had filed like application, and that such action would result in thousands of suits, would force the estate of the debtor in question into bankruptcy and throw thousands of workmen out of employment, and praying that the action of the lower court be sustained, had no proper place in the pleadings and was dismissed.

Argued October 18, 1915. Original Jurisdiction, Miscellaneous Docket, No. 190. Petition of William Funk

for writ of mandamus requiring JOHN Q. VAN SWEAR-INGEN, President Judge of the Court of Common Pleas of Fayette County, Pennsylvania, to announce his decision, already made, in a case pending in the Common Pleas Court of Fayette County, and to file the opinion and order prepared by him in the said case. Before BROWN, C. J., POTTER, STEWART, MOSCHZISKER and FRAZER, JJ.

The petition of William Funk, presented to the Supreme Court by C. A. Tuit and H. S. Dumbauld, filed October 4, 1915, was as follows:

The petition of William Funk respectfully represents:

First: That he is a resident of New Salem, Fayette County, Pennsylvania.

Second: That Honorable JOHN Q. VAN SWEARINGEN is one of the regularly elected and duly qualified judges of the Court of Common Pleas of Fayette County, Pennsylvania, comprising the Fourteenth Judicial District of Pennsylvania, and has been commissioned as president judge of said court.

Third: That, on January 19, 1915, a bill in equity was filed in the Court of Common Pleas of Fayette County, Pennsylvania, sitting in equity, at No. 744, wherein David L. Durr and Fuller Hogsett are plaintiffs, and Josiah V. Thompson is defendant, praying, inter alia, that receivers be appointed to take charge of the estate of the said Josiah V. Thompson, and to restrain all and every of the creditors of the said Josiah V. Thompson from in any manner proceeding against the said Josiah V. Thompson, or in any manner interfering with the assets of the said Josiah V. Thompson.

Fourth: That, on the same date and simultaneously with the filing of said bill, the said Josiah V. Thompson filed an answer thereto, admitting substantially the averments in said bill contained, and joining in the prayer thereof.

Fifth: That, upon consideration of said bill and an-

swer, the court made an order or decree granting the prayers of said bill, and appointing John Brennen, William G. Laidley, and Andrew A. Thompson, receivers of the estate of said Josiah V. Thompson, and in said decree directed, inter alia, as follows:

"Sixth: It is further ordered and decreed that the said defendant, his agents, employees and servants, and also all creditors of the said defendant and other persons holding or having in their possession, or being entitled to the possession of any property or assets of the said defendant, whether owning the same as collateral security as mortgagee, pledgee, or otherwise, be and the same are hereby enjoined and restrained from selling, transferring or in any manner disposing of the said property belonging to the said defendant, or in which defendant may have an interest, except as this court may order, and all other creditors of said defendant, or persons having claims against the said defendant are hereby enjoined and restrained from bringing, and also from further prosecuting suits or actions at law or in equity against the said defendant, and from entering judgments, from issuing executions or attachments against the said defendant, or any of the property in the hands of said receivers without leave of this court first obtained; and in general from in any way interfering with or obstructing the possession and control by the receivers of any of the property of said defendant, or in which he has an interest, and from doing any other act or thing to obstruct the said receivers from the performance of their duties under said order of the court."

Sixth: That your petitioner is an unsecured creditor and holder of a certain promissory note executed by the said Josiah V. Thompson, bearing date the 22d day of November, 1910, in the sum of three thousand dollars ($3,000.00), and due one year from said date, with interest thereon from the 22d day of November, 1913.

Seventh: That, by the order or decree, as aforesaid, your petitioner was restrained from instituting suit for

the collection of said note against the said Josiah V. Thompson, notwithstanding the fact that the said note was due and payable, except by leave of said court first had and obtained.

Eighth : ·That your petitioner, on the day of April, 1915, presented to the said Court of Common Pleas of Fayette County, sitting in equity, at No. 744 in equity, as aforesaid, his petition, setting forth what, to him seem good and sufficient reasons, praying for leave of the said court to institute suit against the said Josiah V. Thompson for the collection of the said note.

Ninth : That the matter was so proceeded in that, on April 13, 1915, argument was had before Honorable JOHN Q. VAN SWEARINGEN, president judge of the said court, he being then the sole judge of the said Court of Common Pleas of Fayette County, Pennsylvania, comprising the Fourteenth Judicial District of Pennsylvania, there being a vacancy in the office of additional law judge for said district at that time, whereupon the said Honorable JOHN Q. VAN SWEARINGEN took into his possession all the papers in the said case and announced from the bench that a prompt decision would be made therein.

Tenth : That numerous creditors of the said Josiah V. Thompson presented like petitions for leave of the said court to institute proceedings against the said Josiah V. Thompson, all of which cases were heard and argued before the said Honorable JOHN Q. VAN SWEARINGEN, on said date.

Eleventh : That, on Saturday, May 22, 1915, all the counsel of record and in interest in said different petitions and proceedings met at the office of said Honorable JOHN Q. VAN SWEARINGEN, where and when the said Honorable JOHN Q. VAN SWEARINGEN stated to the attorneys of record and in interest, as· aforesaid, that he had examined the papers in all of said cases, had considered the briefs submitted by all the counsel in inter-

est; that he had made his decision in all of said cases; that he had prepared an opinion and order covering each of said cases, and that, unless other arrangements were made, he would, on the following Tuesday, announce his decision, as aforesaid, and would file in the office of the prothonotary of said court, the opinion and order in each of said cases, and stated at the time that all that was necessary in said cases was to insert in each of the said orders the date thereof.

That, after some discussion, it was unanimously agreed by the attorneys in interest that the opinion and order in each of the said cases should be held by the said Honorable JOHN Q. VAN SWEARINGEN until June 15, 1915, at which time the said opinion and orders should be filed.

Twelfth. That, on Saturday, June 12, 1915, at 4 o'clock p. m., a special session of said court was called, and, notwithstanding the protest of counsel for petitioner, in writing, filed with the said judge, at said date, the court fixed September 14, 1915, as the time when the said opinion and orders (including the order in the case of your petitioner) should be filed, as aforesaid, the said Honorable JOHN Q. VAN SWEARINGEN then and there publicly announcing from the bench that his decision was made, his opinion ready, and an order in each case, except as to date, ready to be filed.

Thirteenth: That, on Saturday, September 11, 1915, at a session of court, held at the noon hour, notwithstanding the protest of counsel for petitioner, after hearing arguments in favor of a further extension of the time at which such an opinion and order should be filed, and after having taken a standing vote of all the attorneys presumably interested in the matter, as aforesaid, the said Honorable JOHN Q. VAN SWEARINGEN publicly announced from the bench that, in consideration of the fact that the result of said vote was eighteen to two in favor of further extending the time, as aforesaid, he had fixed March 14, 1916, as the time when he

would announce the said decision and file the opinion and orders, as aforesaid.

Fourteenth: That your petitioner is advised and believes that it is the duty of the said Honorable JOHN Q. VAN SWEARINGEN to, without further delay, announce his decision in the litigation of your petitioner, file the order therein in the proper office, and that it is contrary to justice and equity for the said Honorable JOHN Q. VAN SWEARINGEN, presiding over a court of equity, as aforesaid, to permit the attorneys for other litigants to determine adversely to your petitioner's interest, the time and manner of his performance of an official duty.

Fifteenth: That your petitioner is beneficially interested in said decision, opinion and order, in that it determines whether or not he can proceed in an orderly and legal manner to enforce his remedies for the collection of an overdue obligation of the said Josiah V. Thompson, and that the delay in announcing the said decision and filing the said opinion and orders results in unduly hindering, delaying and prejudicing your petitioner in the enforcement of his legal rights in the premises.

Sixteenth: That your petitioner, through his counsel, has, in open court, demanded of the said Honorable JOHN Q. VAN SWEARINGEN the performance of his official duty in respect to the said decision, opinion and orders, which duty the said Honorable JOHN Q. VAN SWEARINGEN, president judge, as aforesaid, hitherto has refused, and still refuses to perform.

Seventeenth: That Honorable Edmund H. Reppert, associate law judge of the said court, (having been appointed as such judge since the beginning of the said proceeding) was, at the time of its beginning, of counsel for the said Josiah V. Thompson, and is, therefore, disqualified from acting in the said matter.

Eighteenth: Your petitioner, therefore, being without other adequate and specific remedy at law, prays your honorable court to direct that a writ of mandamus

may issue, alternative in form, commanding and requiring the Honorable JOHN Q. VAN SWEARINGEN, president judge of the Court of Common Pleas of Fayette County, Pennsylvania, comprising the Fourteenth Judicial District of Pennsylvania, to announce the decision already made in the case now pending in said court, wherein your petitioner has prayed said court for leave to institute proceedings against Josiah V. Thompson, and file the opinion and order, heretofore prepared by him in said case, in the proper office, and otherwise proceed in said cause as to equity and justice shall appertain, or to show cause, if any there be, why the same should not be so done.

On October 5, 1915, the Supreme Court granted a rule on the Honorable JOHN Q. VAN SWEARINGEN, president judge of the Court of Common Pleas of Fayette County, to show cause why the writ should not issue, returnable October 15, 1915.

The Honorable JOHN Q. VAN SWEARINGEN, president judge of the Court of Common Pleas of Fayette County, filed the following answer:

To the Honorable, the Chief Justice and the Associate Justices of the Supreme Court of Pennsylvania:

In answer to the rule granted in this case I respectfully state that it is true that on January 19, 1915, on a bill in equity filed for that purpose, receivers were appointed by the Court of Common Pleas of Fayette County, for the estate of Josiah V. Thompson, and at the same time it is decreed by the court, inter alia, that "All creditors of the said defendant, or persons having claims against the said defendant, are hereby enjoined and restrained from bringing, and also from further prosecuting, suits or actions at law or in equity against the said defendant, from entering judgments, and from issuing executions or attachments against the said defendant, or any of his property in the hands of said receivers, without leave of this court first obtained." Following the appointment of the receivers in the Thomp-

son case bills in equity were filed for the appointment of receivers for the estates of other individuals, upon which bills receivers were appointed as prayed for, and decrees were made similar to that in the Thompson case, until at the present time there are in the hands of the court twelve receivership cases in addition to that of Josiah V. Thompson, all of which twelve receiverships were brought about and rendered necessary in the opinions of the parties by the appointment of the receivers for the Josiah V. Thompson estate, and all of them are so closely connected and associated with the Josiah V. Thompson estate that whatever orders are made in the Josiah V. Thompson estate must be made also in all the other cases. These thirteen estates comprise assets valued at $100,000,000, with debts of nearly half that amount. Receivers have been appointed also for the estates of a number of other individuals and corporations, not, however, so closely connected with the Josiah V. Thompson estate as those already mentioned, and not being now before the court on the questions arising in the thirteen estates specified.

In the Josiah V. Thompson estate and in nearly all of the other receivership estates closely associated therewith, after the receivers had been appointed, and the restraining orders made, petitions of creditors were presented to the court for leave to enter suits against the individuals so in the hands of receivers, in order that the claims of creditors might be reduced to judgments. I granted rules on these petitions to show cause why permission to sue should not be given, and to most of the rules answers were filed. The matters came on for argument and were heard by me on April 13, 1915. It was two or three weeks later before I received the briefs of counsel, following which I prepared opinions and orders in all the cases before the court with the expectation of filing them on May 25, 1915, which purpose on the part of the court was made known to counsel interested.

On May 22, 1915, counsel of record and in interest, in-

cluding a number who had not filed petitions on behalf of their clients to enter suit in any of the receivership cases, but who represented large claims of creditors, and some of whom were large creditors themselves, met in my office at their own instance, and after discussion unanimously requested me to withhold my decisions on the petitions to sue until June 15, 1915, which I agreed to do.

On Saturday, June 12, 1915, the court then being in session, and having been in session all of that day and all of that week, engaged in the trial of criminal cases for the term, counsel representing all of the parties who had filed petitions for leave to sue, and many others interested in the decisions of the court on those petitions, who had not yet filed petitions for leave to sue, came into court of their own volition, and asked for a further postponement of the decisions, stating to the court that such further postponement would be very much to the interest of the unsecured creditors of Josiah V. Thompson, as well as to the many unsecured creditors of the other persons for whose estates receivers had been appointed, and not only to the interest of the creditors of these estates but of vital interest and importance to the whole community in conserving the estates in the hands of the receivers and preventing the sacrifice of the assets. At that time counsel for every creditor interested, except one, joined in the request for the further postponement of the decisions, and because of the almost unanimous request of the parties interested I consented and agreed that no decisions on the petitions for leave to enter suits would be rendered prior to September 14, 1915, a date fixed by counsel themselves.

On Saturday, September 11, 1915, during the regular term of court, the court having been in session all of that week and all of that day in the trial of criminal cases, counsel representing creditors, at their own instance as before, came into court and at the conclusion of a criminal trial again requested the court to further

postpone the rendering of the decisions on the applications for leave to sue in the receivership cases. There was a full statement by counsel of their reasons for desiring a further postponement of action by the court. All of the parties interested were invited and urged by the court to give full expression to their opinions either for or against the application for further postponement of the decisions, in order that the court might obtain the true sentiment of the parties interested and be fully advised as to what counsel believed would be for the best interests of all the parties concerned. It was represented to the court that the postponement of the decisions up to that time had been of great benefit to the receivership estates and to the community at large, in that valuable assets of the receivership estates had not been required to be sacrificed, thus greatly benefiting all unsecured creditors, and in that in the meantime numerous persons not in the hands of receivers but whose estates had been jeopardized by the financial embarrassments of those already in the hands of receivers had been enabled to adjust their financial affairs so that they would be in no future danger of financial troubles as the result of the financial embarrassments of the said Josiah V. Thompson and others whose estates were then in the hands of receivers; that no injury had resulted to any of the unsecured creditors of any of the parties in the hands of receivers by reason of the postponement of the decision of the court up to that time, and that on account of the improved conditions of business, the nature of the assets of the receivership estates, and the prospects for an early adjustment of the financial embarrassments of said Josiah V. Thompson and others whose estates were in the hands of receivers, it would be to the very great interest and advantage of all the unsecured creditors of said receivership estates, and of vital interest to the community at large, that a further postponement of the decisions of the court be had. A number of the attorneys who addressed

the court in favor of the further postponement of the court's decisions stated that they were not only representing clients but were large creditors themselves of some of the receivership estates, and that it was their wish and desire that the court should grant the application for further postponement of the decisions. In the discussion before the court it appeared that many millions of dollars of claims were represented by those favoring the further postponing of the court's decisions, while those opposed thereto represented comparatively small amounts. Some of counsel present, in addition to representing their own clients, stated that they were authorized to speak for other members of the bar representing large claims and to represent to the court that they also were in favor of the further postponement of the decisions. At the close of the arguments of counsel an informal motion was made by one of the attorney's present that the filing of the court's decisions be further postponed until March 14, 1916. In order to ascertain the sentiment of counsel on that motion the court asked all the attorneys interested who were in favor of the motion to rise to their feet, and in response thereto eighteen lawyers arose. Upon the request of the court for those to arise who were opposed to the motion only two members of the bar indicated their opposition thereto, being those representing William Funk, the petitioner for the mandamus in this case. Several members of the bar representing claims against the receivership estates who were not present in court had sent word that they favored the postponement of the court's decisions until a later date. Whereupon I stated that in view of the almost unanimous request of the creditors, as represented by counsel, no decision would be rendered prior to March 14, 1916, which was the date suggested to the court by counsel themselves, unless conditions should so change in the meantime as to make earlier action advisable, and I then suggested to counsel that the matter could again

be called to the attention of the court if conditions should so change.

I have not at any time given any intimation to anybody, lawyer or layman, as to what my decisions of the cases would be, and I have refrained from rendering the decisions wholly on account of the almost unanimous requests of counsel interested that the decisions be withheld, for the reasons advanced by them.

On October 15, 1915, leave was given by the Supreme Court to certain members of the bar of Fayette County, a number of whom were interested personally as creditors of Josiah V. Thompson, to file a petition with the above rule and answer.

Such petition alleged that in the event of the lower court being ordered to file the opinion and orders immediately similar action would have to be taken where other, petitioners who were creditors of the estate had filed like applications and that such action would result in thousands of suits, would force the estate of the debtor in question into bankruptcy, and throw thousands of workmen out of employment; and prayed that the facts therein recited be given consideration in the determination of the rule to show cause granted on the respondent.

PER CURIAM:

And now, October 18, 1915, the five members of the court who duly considered this petition, to which an insufficient answer has been filed, are of one mind that the petitioner is entitled to the writ of mandamus for which he prays, and it is so ordered. The petition of the members of the bar of Fayette County, filed by permission of the court, has no proper place in the pleadings. Let the writ of mandamus go out at respondent's costs.