TRIBUNE REVIEW PUB. CO. et al.

v.

THOMAS.

Civ. A. No. 12033.

United States District Court
W. D. Pennsylvania.

March 12, 1954.

Fred B. Trescher, Greensburg, Pa., for plaintiffs.

Charles E. Kenworthey, Pittsburgh, Pa., for intervening plaintiff.

H. Reginald Belden and Paul K. McCormick, Greensburg, Pa., for defendants.

GOURLEY, Chief Judge.

In this proceeding the plaintiffs and intervening plaintiff are newspaper publishers and the defendant is the sheriff of Westmoreland County, Pennsylvania.

The matter comes before the court on a complaint in equity to restrain and en-

join the enforcement of a regulation or order issued by the Court of Westmoreland County, Pennsylvania. Westmoreland County is one of sixty-seven counties in the Commonwealth of Pennsylvania.

Said order as issued by the Court of Common Pleas, Court of Quarter Sessions, and Court of Oyer and Terminer of Westmoreland County, Pennsylvania, provides:

"No one shall take any pictures inside of the courthouse during any session of the court, or the recesses between sessions, and no person, litigant, prosecutor, defendant, plaintiff, claimant or respondent, juror, or witness shall be photographed or have his or her or their pictures taken in a court room or in any of the halls, corridors or approaches thereto during any session of the court or recesses between sessions, and no prisoner, or inmate of the county jail shall be photographed in the jail or in any of the approaches thereto or on his way to or from a session of the court."

The defendant, sheriff of Westmoreland County, Pennsylvania, is the highest police authority in said county, and in the exercise of his duties, was empowered and directed by virtue of his office to enforce the mandate of said County Court.

In accordance with the provisions of law, this Court requested the impaneling of a statutory three judge court. Said request was refused for the reason that the order or regulation was local in nature, being issued by a county court, and did, therefore, not relate to the action of an officer of the state or of an order made by an administrative board or commission of the state. Wilentz v. Sovereign Camp Woodmen of the World, 306 U.S. 573, 59 S.Ct. 709, 83 L.Ed. 994; 28 U.S.C.A. § 2281 et seq.

Application was made ex-parte for a temporary restraining order, which was granted.

American Bar Association Judicial Canon 35, as adopted September 30, 1937, provides:

"Improper Publicizing of Court Proceedings. Proceedings in court should be conducted with fitting dignity and decorum. The taking of photographs in the court room, during sessions of the court or recesses between sessions, and the broadcasting of court proceedings, are calculated to detract from the essential dignity of the proceedings, degrade the court, and create misconceptions with respect thereto in the mind of the public, and should not be permitted."

Since I am in agreement with this Canon of the American Bar Association, the restraining order issued did not interfere with the order or regulation of the Westmoreland County Court as it related to the taking of photographs in the courtroom of any judge, or places in such close proximity thereto as to interfere with the orderly proceedings of the court, in the conduct of trials actually in progress.

The temporary restraining order provides:

"And Now, March 2nd, 1954, the motion of the plaintiffs, The Tribune Review Publishing Co. and David W. Mack, for temporary restraining order having been presented in open court, and it appearing to the court from the verified complaint herein that the defendant, Howard Bud Thomas, under color of a regulation adopted by the Courts of Westmoreland County, is interfering with the right of the plaintiffs, The Tribune Review Publishing Co. and David W. Mack, Managing Editor, to gather and publish news, including photographic likenesses of news worthy subjects, and that such acts amount to a denial of the plaintiffs' and other of due process of law and of freedom of speech and of freedom of the press, and that immediate and irreparable loss and damage will

result to the plaintiffs before notice can be served and a hearing had on plaintiffs' motion for preliminary injunction. in that the plaintiffs will be deprived of any means whatever of photographing witnesses and other news worthy subjects after they depart from the court house in Greensburg, to their residences beyond Westmoreland County, and that said acts amount to a censorship of the press in violation of the 14th Amendment to the Constitution of the United States of America, and that the right of the public to be informed on matters of public interest will be infringed, it is ordered, directed and decreed—

"(a) That the defendant, Howard Bud Thomas, his agents, deputies and others acting under him, under color of the regulation or order of court of February 25th, 1954, on the basis of usage and custom in said county before February 25, 1954, be restrained from enforcing or attempting to enforce the same except insofar as said regulation or order of court relates to court rooms while courts are in session or recesses thereof, or places in such close proximity thereto, as to interfere with the orderly proceedings of the court in the conduct of trials actually in progress, and except insofar as said regulation purports to forbid the photographing of the defendant in custody of the court except with his written consent.

"(b) That the defendant, Howard Bud Thomas, his agents, deputies and others acting under him, be restrained from in any manner interfering with the news camera men or others acting for the plaintiffs from photographing witnesses, litigants, prosecutors, defendant, plaintiff, claimant or respondent, or other persons of news worthy interest in the proceeding presently on trial or to be on trial for the purpose of printing and publishing the same until such time as the plaintiffs' motion for preliminary injunction can be heard on notice, and thereafter until the constitutionality of such regulation or order of court and the acts of the defendant, Howard Bud Thomas, in the enforcement of the same can be finally determined provided the consent of such person is first obtained in writing.

"Provided that the plaintiffs first give security in the sum of $1,000 for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained; said bond to be approved by the Court or by the Clerk of the Court.

"It is further ordered that this order shall expire ten days after entered unless within such time the order, for good cause shown, is extended for a longer period, or unless the defendant consents that it may be extended for a longer time.

"It is further ordered that the plaintiffs' motion for preliminary injunction be set down for hearing on Monday, the 8th day of March, 1954, at 10 o'clock A.M., Court Room No. 2

"3:36 P.M.

/s/ Wallace S. Gourley, C. J."

When a court room or facilities in close proximity thereto would be invaded by a reporter or reporters with camera, no judge, with all the power of the law at his command, can maintain the order and decorum essential to the intelligent discharge of the court's proper function.

The defendant appealed from the granting of said restraining order to the United States Court of Appeals for the Third Circuit and also filed a writ of prohibition in said appellate court to the temporary restraining order issued by this Court. The appellate court denied the petition for writ of prohibition and dismissed the appeal for want or jurisdiction, without prejudice to the right of the defendant to move the district court for the dissolution of the temporary restraining order, and to appeal if

such motion be denied or a preliminary injunction be issued after hearing.

Application has been made for the dissolution of the temporary restraining order previously entered by this Court, a full and complete hearing has been held on said motion and testimony has been offered in support of the application for a preliminary injunction.

Pending the determination of the questions presented, the Court extended the temporary restraining order and clarified its intention, said clarification order being as follows:

"On the 2nd day of March, 1954, the Court entered a Temporary Restraining Order pending the disposition of the issues raised in the within proceeding wherein the defendant, his agents and others acting under him were restrained from enforcing or attempting to enforce the order of the Court of Common Pleas, Court of Quarter Sessions and Court of Oyer and Terminer, Westmoreland County, Pennsylvania, issued on the 25th day of February, 1954, if written permission was given by the defendant or the person concerned to the taking of their photograph on the premises identified as the Westmoreland County Court House, except insofar as said regulation or order of court related to court rooms while courts are in session or recesses thereof, or places in such close proximity thereto, as to interfere with the orderly proceedings of the court in the conduct of trials actually in progress.

"It appears that some confusion exists as to the interpretation to be given the order issued by this Court on the 2nd day of March, 1954, as to the phrase 'places in such close proximity to the court rooms as to interfere with the orderly proceedings of the court in the conduct of trials actually in progress.'

"It appears that clarification should be given to the intention of the court in the issuance of a temporary restraining order pending the final disposition of the motion to quash the temporary restraining order and the adjudication of the petition for preliminary injunction as to the enforcement of said order as issued by said Westmoreland County Courts on the 25th day of February, 1954.

"It is not in dispute that the Orphans' Court of Westmoreland County, Pennsylvania, has not entered an order similar to that issued by the members of the Courts of Common Pleas, Quarter Sessions and Oyer and Terminer, and, therefore, no basis exists for this court to enter an order affecting the temporary restraining order pending the disposition of the issues as to the Orphans' Court of Westmoreland County, Pennsylvania.

"It would appear to this Court in the absence of some unusual situation, places in such close proximity to the court room where court is actually being held should include only those facilities on that part of the floor of the court house where the court room is located, which is adjoining to or a part of the facilities commonly known, designated and accepted as the facilities or quarters of each judge for the performance and administration of his duties.

"On the basis of the modification just expressed, the order issued by this Court on the 2nd day of March, 1954, together with the bond in the amount of $1,000.00 entered on the same date, is in each instance continued pending the entry of an order of this Court on the motion to quash the temporary restraining order and an adjudication of the petition for the entry of a preliminary injunction restraining the effectiveness of the order issued by the Westmoreland County Court on the 25th day of February, 1954".

Strange as it seems, the question appears to be one of first impression.

In view of the importance thereof and the indefiniteness of the law as to the duty of this Court and the merits of the proceeding, it was impossible for the court to dispose of the motion to dissolve the temporary restraining order without reflected judgment and an exhaustive research of the law in connection therewith.

### Motion To Quash Or Dissolve Temporary Restraining Order

Determination will, therefore, first be made of the motion to dissolve the temporary restraining order.

It is contended that the United States District Court ought not to take jurisdiction in this proceeding for the reason that it does not really or substantially involve a dispute or controversy properly within the jurisdiction of this Court, and that the proceeding is not properly laid in the Federal District Court.

Petitioners claim the regulation or order deprives them of their right to gather, publish and print news through the photographic reproductions of newsworthy subjects, and amounts to an illegal censorship of the press, a denial of the right of free speech, and a deprivation of their property rights without due process of law.

Freedom of the press is a crucial cornerstone of our Anglo-Saxon democratic institutions. To impede or vitiate its tenor by administrative or legislative fiat is inimical to our cherished freedoms—for the preservation of which the judicial branch of our state and federal governments are primarily constituted.

There has been a tendency to interfere with the fundamental right of the people to be kept thoroughly informed as to the events of the day. The courts should be alert and vigilant to make positive that sources of news should not be undermined, such as through the growing practice of secrecy in government on national, state and local levels; the growing tendency of public officials to feel that they are not accountable to the public; that they can conduct the business of their offices in secret; that they may seal or impound public records; that they may divulge only such information as they think is good for the people to know; that they may extend "military security" into areas of news which have no bearing on the nation's security.

This is the pattern by which the Fascists in Italy, the Nazis in Germany, the Communists in Russia, the Peronistas in Argentina began to limit the right of their people to know, forced their newspapers into complete subjection and were able to take from them all their other democratic rights as well.

Regretably or not, the misfortunes and frailities of neighbors and public figures are subjects of considerable interest and discussion to the rest of the population, and the public interest in obtaining information becomes dominant over the individual's desire. Where any person has achieved or has had thrust upon him a questionable and indefinable status of a public figure, it is a news item.

News has been defined as "not a mirror of social conditions, but the report of an aspect that has obtruded itself." Unusual things make news; according to the old saying of the newspaper profession that if a dog bites a man, it is not news—but if a man bites a dog, it is.

It is illusory, therefore, to expect the newspapers in the publication of news to retreat into the type of ivory tower to which those who sigh for the past would relegate them.

The fact that this petition may have been precipitated and brought into glaring focus by the notorious criminal proceeding now in progress in Westmoreland County, as relates to the Phantom or Turnpike Killings, must not blur the evaluation of issues which far transcend in magnitude and significance any momentary considerations.

For the decision to be enunciated must affect all matters which arise in the Westmoreland County Courts, whether they be actions in divorce, civil suits, or criminal trials, and the pronouncements

to be entered must be of general application, providing, as they must, adequate safeguards for the dignified and judicious administration of the Courts of Westmoreland County and simultaneously safeguarding the basic American right of a free press.

■ Under the Fourteenth Amendment the federal judicial power can redress the wrong done by a state officer misusing the authority of the State with which he is clothed; under such circumstances inquiry whether the State has authorized the wrong is irrelevant. Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714; Barney v. City of New York, 193 U.S. 430, 24 S.Ct. 502, 48 L.Ed. 737; Home Telephone and Telegraph Company v. City of Los Angeles, 227 U.S. 278, 33 S.Ct. 312, 57 L.Ed. 510.

■ The Fourteenth Amendment safeguards the freedom of the press from state aggression. Any judicial decree which violates vested rights is within the protection of this amendment. Nesbit v. Riesenman, 298 Pa. 475, 148 A. 695, certiorari denied 281 U.S. 754, 50 S.Ct. 408, 74 L.Ed. 1164.

■ The freedom of the press guaranteed by the Constitution embraces at least the liberty to discuss publicly and truthfully all matters of public concern without previous restraint or fear of subsequent punishment. Thornhill v. State of Alabama, 310 U.S. 88, 60 S.Ct. 736, 84 L.Ed. 1093.

The jurisdiction of the District Court over this action is founded on the Act of Congress of June 25, 1948, c. 646, Section 1, 62 Stat. 932, 28 U.S.C.A. § 1343, which provides in part as follows:

"Civil rights. The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:

\* \* \* \* \* \*

"(3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act

of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States. \* \* \* "

■ Freedom of speech and of the press are among the civil rights to which this jurisdictional statute extends. Hague v. C. I. O., 307 U.S. 496, 59 S.Ct. 954, 83 L.Ed. 1423.

Said Act of Congress was promulgated by virtue of Section 5 of the Fourteenth Amendment to the Constitution of the United States which provides Congress shall have power to enforce, by appropriate legislation, the provisions of this Article. Said Article provides, as it applies to the matters involved in this proceeding, as follows:

"All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

■ A state may act through different agencies, either by its legislative, its executive, or its judicial authorities; and the prohibitions of the Fourteenth Amendment to the Constitution of the United States extend to all action of the State denying equal protection of the laws, whether it be action by the legislative, executive or judicial branch of the State government. Congress may enforce the prohibitions whenever they are disregarded by any branch of the State government. The mode of enforcement is left to the discretion of Congress.

The constitutional provisions of the Fourteenth Amendment, therefore, means that no agency of a state or of the officers or agents by whom its powers are asserted, and this includes the judicial branch of the government, shall

deny to any person within this jurisdiction the equal protection of the laws. Therefore, any person, regardless whether it be the legislative, executive or judicial branch of the government, who by virtue of his public position under a State government, deprives another of property, life or liberty, without due process of law, or denies or takes away the equal protection of the laws, violates the constitutional inhibition.

■ Several rights, such as are guaranteed by the Constitution of the United States against State aggression, cannot be impaired by the wrongful acts of individuals unsupported by state authority in the shape of laws, customs or judicial or executive proceedings. The wrongful act of an individual, unsupported by any such authority, is simply a private wrong, or a crime of that individual; an invasion of the rights of the injured party; it is true, whether they affect his person, his property, or his reputation; but if not sanctioned in some way by the state, or not done under state authority, his rights remain in full force, and may presumably be vindicated by resort to the laws of the state for redress.

■ Whoever, by virtue of public position, under a state government, deprives another of property, life or liberty, without due process of law, or denies or takes away the equal protection of the laws, violates the constitutional inhibition; and, as he acts in the name and for the state, and is clothed with the state's power, his act is that of the state. Barney v. City of New York, 193 U.S. 430, 439, 440, 24 S.Ct. 502, 48 L.Ed. 737.

Since the state, for present purposes, can only act through functionaries, the question naturally arises what functionaries, acting under what circumstances, are to be deemed the state for purposes of bringing suits in the Federal Courts on the basis of illegal state action. The problem is beset with inherent difficulties, and not unnaturally has had a fluctuating history in the decisions of the court. It is not to be resolved by abstracting considerations such as the fact that every official who purports to wield power covered by a state is pro tanto the state. Otherwise every illegal discrimination by a policeman on the beat would be state act for the purpose of suit in a Federal Court. My question is not whether a remedy is available for such an illegality, but whether it is available in the first instance in a Federal Court. Such a problem of federal judicial control must be placed in the historic context of the relationship of the Federal Courts to the states, with due regard for the natural sensitiveness of the states, and for the appropriate responsibility of state courts to correct the act of lower state courts and state officials. Snowden v. Hughes, 321 U.S. 1, 16, 17, 64 S.Ct. 397, 88 L.Ed. 497.

I believe the order and regulation promulgated by the Westmoreland County Court was issued under color of state law. It further appears that a custom or usage existed in the Courts of Westmoreland County, Pennsylvania, prior to the adoption of said order or regulation in which photographers were permitted to take pictures of any person in the court house where the business of the court was conducted other than in the courtroom or in the area in close proximity thereto while a member of the court was in session or involved in the trial of a proceeding.

It is provided by statute in Pennsylvania:

"Each of the said courts (of Common Pleas) shall have full power and authority to establish such rules for regulating the practice thereof respectively, and for expediting the determination of suits, causes and proceedings therein, as in their discretion they shall judge necessary or proper: Provided, That such rules shall not be inconsistent with the Constitution and laws of this commonwealth." Act of 1836, P.L. 784, section 21, 17 P.S.Pa. § 2076.

The Supreme Court of Pennsylvania is vested with the power to prescribe by general rule, inter alia, the practice and procedure in civil actions at law and in

equity for the Courts of Common Pleas in every county. Said Act further provides that rules promulgated shall be consistent with the Constitution and shall neither abridge, enlarge nor modify the substantive rights of any litigant. The Supreme Court, however, is not vested with the right to promulgate rules or regulations to "the courts of oyer and terminer, courts of quarter sessions, * * * and the practice and procedure in said courts shall remain and continue as prescribed by existing law." Act of 1937, June 21, P.L. 1982, as amended, 17 P.S.Pa. § 61 et seq.

It has been further provided that each of the Courts of Common Pleas may adopt additional local rules for the conduct of its business, but shall not be inconsistent with or in conflict with said rules prescribed by the Supreme Court of Pennsylvania. Act of 1937, June 21, P.L. 1982, Act of 1939, P.L. 14, Section 1, 17 P.S.Pa. § 62.

In connection with the conduct of jury trials, the Supreme Court of Pennsylvania has provided as follows:

Subject to the requirements of due process of law and the constitutional rights of the parties, the court may make and enforce rules and orders covering any of the following matters, inter alia:

Regulating or excluding the public or persons not interested in the proceedings whenever the court deems such regulation or exclusion to be in the interest of the public good, order or morals. Rule 223(a)(4).

During the trial of actions, the court shall prohibit the taking of photographs and motion pictures in the courtroom. Rule 223(b).

Each of the above rules was adopted by the Supreme Court of Pennsylvania on September 8, 1938, effective March 20, 1939, Pa.R.C.P. 12 P.S.Appendix.

The judges of the County Courts of Oyer and Terminer and Quarter Sessions have been delegated by the Legislature of the Commonwealth of Pennsylvania full power and authority to establish such rules for regulating the conduct of the business of said courts, and for expediting the determination of suits, causes and proceedings therein, as in their discretion they shall judge necessary or proper; provided, that such rules shall not be inconsistent with the Constitution and laws of this Commonwealth. Act of March 31, 1860, P.L. 427, § 32, 17 P.S.Pa. § 361, subd. 6.

■ It, therefore, must be concluded that the rule of court which is brought into issue in the instant proceeding was adopted on the basis of legislative and judicial authority. The rule as it would apply to the proceedings of the Court of Common Pleas would stem from the rules of the Supreme Court of Pennsylvania and from the authority delegated by the Legislature, while the authority for the rule as it would apply to the Court of Quarter Sessions and Court of Oyer and Terminer would be based solely on legislative authority.

■ Even in the absence of any statutory provision or regulation, courts have inherent power to make their own rules of, practice and procedure to facilitate the business of the court and to promote the orderly and expeditious administration of justice for the benefit of the parties as well as for the benefit of the court. 21 C.J.S., Courts, § 170(b)(1).

It is clear of doubt that the act, rule or regulation of the Court of Westmoreland County, Pennsylvania, pertains to the subject of said courts' powers and authority. The authority must be tested by assuming that the officer possesses the power if the act be one which there would not be opportunity to perform but for possession of some state authority.

■ The Federal Court is therefore not deprived of jurisdiction over the subject matter of this proceeding, because the question can be adjudicated or the constitutionality of the rule or regulation of the Westmoreland County Court adjudicated through application of state law in State Courts. The jurisdiction is therefore proper in this Court and the motion to dismiss or quash the

temporary restraining order previously issued and continued pending adjudication of the matter before this Court will be refused.

### Should The Proceeding Be Adjudicated Or Stayed Pending Determination Of State Court

The problem of the determination of the issues by this Court or, in the alternative, the staying of the proceeding pending determination by the Supreme Court of Pennsylvania is most troublesome and complex.

It is difficult to reconcile the many authorities in which consideration has been given as to when the United States District Court, where jurisdiction exists, should proceed to hear and adjudicate the issues raised in connection with the provisions of the Federal Constitution when remedial action might lie under State law, and the authorities which conclude that the proceeding in the Federal Court should be stayed and jurisdiction retained until a determination of the issues by the highest appellate authority in the state where the question has been raised.

The authorities which tend to indicate that where a constitutional question is raised as to the act of a state officer, depriving a person of a constitutional right, should be adjudicated by the Federal Court without referring the matter to the State jurisdiction are as follows: Lane v. Wilson, 307 U.S. 268, 59 S.Ct. 872, 83 L.Ed. 1281; Railroad and Warehouse Commission of Minnesota v. Duluth Street R. Co., 273 U.S. 625, 47 S.Ct. 489, 71 L.Ed. 807; Gobitis v. Minersville School Dist., D.C., 21 F.Supp. 581; Mitchell v. Wright, 5 Cir., 154 F.2d 924; Hague v. C. I. O., supra; Westminster School Dist. v. Mendez, 9 Cir., 161 F.2d 774; Home Telephone and Telegraph Company v. City of Los Angeles, supra.

The authorities that seem to indicate that where jurisdiction exists the proceeding should be stayed in the Federal Court until a determination of the issues by the highest tribunal in the State court are as follows: Alabama Public Service Comm. v. Southern R. Co., 341 U.S. 341, 71 S.Ct. 762, 95 L.Ed. 1002; Shipman v. Du Pre, 339 U.S. 321, 70 S.Ct. 640, 94 L.Ed. 877; Railroad Commission of Texas v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971; Great Lakes Dredge & Dock Co. v. Huffman, 319 U.S. 293, 63 S.Ct. 1070, 87 L.Ed. 1407; Wilson v. Beebe (Statutory Court), D.C., 99 F.Supp. 418; City of Memphis v. Cumberland Telephone & Telegraph Co., 218 U.S. 624, 31 S.Ct. 115, 54 L.Ed. 1185; A. F. of L. v. Watson, 327 U.S. 582, 66 S.Ct. 761, 90 L.Ed. 873; City of Chicago v. Fieldcrest Dairies, Inc., 316 U.S. 168, 62 S.Ct. 986, 86 L.Ed. 1355; Matthews v. Rodgers, 284 U.S. 521, 52 S.Ct. 217, 76 L.Ed. 447; Barney v. City of New York, supra; Snowden v. Hughes, supra; Natural Gas Pipeline Co. v. Slattery, 302 U.S. 300, 58 S.Ct. 199, 82 L.Ed. 276.

Resolving the problem of trying to reconcile the various decisions, I conclude since the order and regulation presented for adjudication was promulgated under color of state authority or law, it is the duty of the court to stay the proceeding in this Court pending a determination by the Supreme Court of Pennsylvania.

In the taking and publication of photographs, the law has recognized the privilege of privacy which reposes certain limitations upon the freedom of the press. 16 C.J.S., Constitutional Law, § 213, page 630.

Not only has the federal government provided constitutional safeguards for the preservation of a free and untrammeled press, but the states, too, have jealously and zealously enacted similar constitutional insulation from external assaults upon this precious freedom. The Pennsylvania Constitution, P.S., gives firm expression to a free press.

Thus, Article 1, Section 7 provides. inter alia:

"The printing press shall be free to every person who may undertake to examine the proceedings of the Legislature or any branch of government, and no law shall ever be

made to restrain the right thereof. The free communication of thoughts and opinions is one of the invaluable rights of man, and every citizen may freely speak, write and print on any subject, being responsible for the abuse of that liberty. * * * "

Viewing the terms of the rule or order which this complaint petitions to be enjoined, more particularly as it applies to a criminal proceeding of general public interest now in process of trial, specific constitutional provision exists guaranteeing the accused a speedy public trial. Constitution of Pennsylvania, Article I, Section 9.

It is further provided that all courts shall be open. Constitution of Pennsylvania, Article I, Section 11.

Whether or not the rule or order in question conflicts with the aforementioned provisions of the Constitution of Pennsylvania is a matter for proper judicial interpretation.

 Equitable relief may be granted only when the District Court, in its sound discretion exercised with the scrupulous regard for the rightful independence of state governments which at all times actuate the Federal courts, is convinced that the asserted federal right cannot be preserved except by granting the extraordinary relief of an injunction in the federal courts. Considering that few public interests have a higher claim upon the discretion of a federal chancellor than the avoidance of needless friction with state policies, the usual rule of comity must govern the exercise of equitable jurisdiction by the District Court. Alabama Public Service Comm. v. Southern R. Co., supra; Great Lakes Dredge & Dock Co. v. Huffman, supra; A. F. of L. v. Watson, supra.

 The mere illegality or unconstitutionality of a state or subdivisional law or order is not in itself a ground for equitable relief in the courts of the United States. If the remedy at law is plain, adequate, and complete, the aggrieved party is left to that remedy in the State courts, from which the cause may be brought to this Court for review if any federal question be involved. Great Lakes Dredge & Dock Co. v. Huffman, supra; Matthews v. Rodgers, supra.

There are cogent reasons for requiring resort in the first instance to the State tribunal when the particular method by which the local officer has chosen to exercise authority is also attacked, for there always exists the possibility of modification of such rule or order upon which the actions of such state officers are premised. Natural Gas Pipeline Co. v. Slattery, supra.

The resources of equity are equal to an adjustment that will avoid needless friction with State policies. Considerations of delay, inconvenience, and cost do not call for a different result. For we are here concerned with the much larger issue as to the appropriate relationship between federal and state authorities functioning as a harmonious whole. City of Chicago v. Fieldcrest Dairies, Inc., supra.

The authority for petitioners to secure relief in the highest tribunal of the Commonwealth of Pennsylvania as a court of original jurisdiction is well recognized and clearly chartered both by statute and legal construction.

Article V, Section 3 of the Constitution of Pennsylvania confers upon the Supreme Court of Pennsylvania original jurisdiction of mandamus to courts of inferior jurisdiction within the state. Under the Act of June 8, 1893, P.L. 345, 12 P.S.Pa. § 1911 et seq., it is specifically provided that a writ of mandamus may be used to procure the enforcement of a public duty or to compel a judge of inferior jurisdiction to perform his duties. Commonwealth ex rel. Duff v. Keenan, 347 Pa. 574, 33 A.2d 244.

The judges of the Supreme Court have full power and authority when, and as often as there may be occasion, to issue all remedial writs and processes. 17 P.S.Pa. § 48.

■ When the issue posed concerns the promulgation of rules or orders which contravene constitutional authority, the question of the exercise of discretionary authority is not raised, and the resort to mandamus is in order. Funk v. Van Swearingen, 251 Pa. 229, 96 A. 467; Commonwealth ex rel. Duff v. Keenan, supra; Blazis v. Bechtel, 256 Pa. 529, 100 A. 967; In re Powel's Estate, 209 Pa. 76, 57 A. 1111; Johnson's License, 165 Pa. 315, 31 A. 203.

■ The power on the part of the Supreme Court of Pennsylvania to issue a writ of prohibition has never been doubted. Such a writ is proper not only whenever a court acts outside of its jurisdiction but also when there is an abuse of jurisdiction. The object of the writ being to restrain subordinate judicial tribunals of every kind from exceeding their jurisdiction, its use in all proper cases should be upheld and encouraged since it is of vital importance to the due administration of justice that every tribunal vested with judicial functions should be confined strictly to the exercise of those powers with which it has been by law entrusted.

The Supreme Court of Pennsylvania has exercised this power with comparative frequency. Carpentertown Coal & Coke Co. v. Laird, 360 Pa. 94, 61 A.2d 426; In re First Congressional District Election, 295 Pa. 1, 144 A. 735; Park's Petition, 329 Pa. 60, 196 A. 495; Philadelphia County Grand Jury Investigation Case, 347 Pa. 316, 32 A.2d 199; cf. In re Dauphin County Grand Jury Investigation Proceedings (No. 1), 332 Pa. 289, 2 A.2d 783; Commonwealth v. Smart, 368 Pa. 630, 84 A.2d 782; McNair's Petition, 324 Pa. 48, 187 A. 498, 106 A.L.R. 1373.

The power of controlling the action of inferior courts is so general and comprehensive that it has never been limited by prescribed forms of procedure or by the particular nature of the writs employed for its exercise. It may further be pointed out that Article V, section 3, of the Constitution of Pennsylvania expressly permits the exercise of the Supreme Court of original jurisdiction in cases of mandamus to courts of inferior jurisdiction, and prohibition is the exact counterpart of mandamus, the only difference being that the latter commands certain things to be done whereas prohibition forbids the doing of certain things which ought not to be done. Carpentertown Coal & Coke Co. v. Laird, supra; Commonwealth v. Mellon National Bank & Trust Co., 360 Pa. 103, 61 A.2d 430.

Since the rule of court in question has been promulgated on the basis of judicial and legislative authorities, which specifically provided that no rule or regulation of inferior courts of the Commonwealth of Pennsylvania should be violative of the laws or the Constitution of the Commonwealth of Pennsylvania, although jurisdiction exists in this court to determine the issues by virtue of congressional exactment and in order not to interfere with the domestic policies of the State of Pennsylvania, it appears to me proper and fitting that the constitutionality of the rule of court should be considered by the highest tribunal in the Commonwealth of Pennsylvania before an adjudication of the issues in this jurisdiction, as they relate to the Constitution of the United States, is entered.

If the rule or order promulgated by the Westmoreland County Courts were final and conclusive, it is my judgment that the United States District Court would be a proper forum in the first instance to render a determination of the issues posed.

But where the rule or order may be stricken down as conflicting with the Rules of the Supreme Court of Pennsylvania or the legislative authority of the Commonwealth of Pennsylvania, a due regard must be had for the natural sensitiveness of the states and for the appropriate responsibility of State courts to correct the action of lower state courts and state officials. Snowden v. Hughes, supra.

Therefore, after reflected judgment, it is my conclusion that it is a proper course to retain the proceeding that is

now pending until a definite determination of the state question is made by the Supreme Court of the Commonwealth of Pennsylvania. Ample authority exists for the Supreme Court of Pennsylvania to assume original jurisdiction.

### Findings of Fact

1. The plaintiff, The Tribune Review Publishing Company, is a corporation organized and existing under the laws of Pennsylvania, and having its principal office or place of business in the City of Greensburg, Westmoreland County, Pennsylvania.

2. The plaintiff, David W. Mack, is General Manager of the plaintiff, The Tribune Review Publishing Company, and is a resident of the City of Greensburg, Westmoreland County, Pennsylvania.

3. The plaintiffs are publishers of the Greensburg Morning Review and the Greensburg Daily Tribune, respectively morning and afternoon newspapers of general circulation in Westmoreland County, Pennsylvania, and elsewhere. Said papers are each published five days in each week.

4. Intervening plaintiff, P G Publishing Company, is the publisher of the "Pittsburgh Post-Gazette" a daily morning newspaper of general circulation in Allegheny County, Pennsylvania, and surrounding counties.

5. The defendant, Howard Bud Thomas, is the duly elected and acting sheriff of Westmoreland County, Pennsylvania.

6. By order dated February 25, 1954, Richard D. Laird, President Judge, Edward G. Bauer, Judge, and John M. O'Connell, Judge, of the Courts of Common Pleas, Quarter Sessions, Oyer and Terminer, General Jail Delivery, of Westmoreland County, Pennsylvania, adopted, as Rule No. 205(b), the following Rule of Court:

"No one shall take any pictures inside of the Court House during any session of the Court of the recesses between sessions, and no person, litigant, prosecutor, defendant, plaintiff, claimant or respondent, juror or witness shall be photographed or have his or her or their pictures taken in a court room or in any of the halls, corridors or approaches thereto during any session of the Court or recesses between sessions, and no prisoner or inmate of the County Jail shall be photographed in the jail or in any of the approaches thereto or on his way to or from a session of Court."

7. The fourth judge comprising said Court, Judge George H. McWherter, was ill at the time said regulation was signed by the other Judges.

8. Said regulation was filed in the offices of the Prothonotary of the Common Pleas Court and the Clerk of the Court of Quarter Sessions and Court of Oyer and Terminer.

9. Said regulation contained no penal provision, and in itself provided no method for the enforcement of the same, and specified no tribunal in which violators of said regulation might be tried or heard.

10. Greensburg is the county seat of Westmoreland County, is within 30 miles of Pittsburgh and is within the area in which the intervening plaintiff normally gathers and publishes news.

11. The defendant, Howard Bud Thomas, sheriff of Westmoreland County, at or about the time said regulation was filed, announced that he would, by appropriate means, enforce said regulation, and subsequently advised the plaintiff, David W. Mack, and news photographers that they would be arrested and charged with contempt of court if photographs for publication in newspapers were taken in the court house in violation of said regulation, and requested news photographers, upon entering the court house, to deposit their cameras in the sheriff's office.

12. The court house in Greensburg is a structure consisting of a basement and four floors. The basement has an en-

trance at street level from Pittsburgh Street, and the first floor has an entrance somewhat above street level from Main Street;

The basement of said structure is occupied by public offices, such as the clerk's office, the Commissioners' annex, the tax assessment office, the Recorder of Deeds annex, booths for telephone operators, hearing rooms and lavatories;

The first floor of said structure is occupied by the Sheriff's office, the Prothonotary's office, and the Recorder of Deeds office, the Register of Wills Office, the Commissioners Office and the Controller's office;

The second floor of said court house is occupied by two court rooms, which are separated by a corridor and hallway approximately 50 feet by 72 feet, Judges' chambers, a Public Library, an attorneys room and a hearing room, and a room used partly as a jury room and partly as a hearing room;

The third floor of said court house has a court room and corridor approximately the same size as that on the second floor, and is also occupied by the District Attorney's office, a photostating room and a hearing room;

The court rooms on the second floor extend to the third floor of the structure and the entrances to the balconies of said rooms are from the third floor;

The fourth floor of said structure contains two court rooms, which are separated by a corridor of approximately the same size as on the second floor. One of said court rooms is occupied by the Orphans' Court of Westmoreland County, and also on the fourth floor is the registration office, the coroner's office, and offices which are occupied by branches of the sheriff's office and the clerk's office.

13. Said floors are reached by stairways connecting the several floors and by two elevators which serve all five floors of the building.

14. On the 2nd day of March, 1954, at about 8:00 o'clock A.M., before any court was in session, the defendant, Howard Bud Thomas, stationed guards or deputies at various points about the court house, and when camera-men approached, he informed them of said court regulation, and requested them to deposit their cameras in his office, which in all instances was complied with.

15. Between 10:00 and 10:30 o'clock, A.M., on March 2, 1954, the plaintiff, David W. Mack, and one Castle Pyle, a news photographer, both representing the plaintiff, The Tribune Review Publishing Company, entered the court house while court was in session for the purpose of photographing newsworthy persons who were in and about the court house attending the trial of one John Wesley Wable, who was on trial for murder, when they were accosted by the defendant, Howard Bud Thomas, and asked whether they were familiar with the regulation of the court, and they replied they were. The said Howard Bud Thomas then advised them not to take any pictures. The plaintiff, David W. Mack, asked what the penalty would be if they did take pictures, and the defendant, Howard Bud Thomas, said that if pictures were taken they would be arrested and charged with contempt of court. The plaintiff, David W. Mack, and the said Castle Pyle thereupon left the court house.

16. For one hundred years prior to the adoption of the regulation of February 25, 1954, photographs had been taken in all parts of the court house with the exception of the court rooms while court is in session, and said photographs have been used for reproduction in the newspapers.

17. At the time of the presentation of the petition for a temporary restraining order and at the time of the hearing on the motion for preliminary injunction only one court was in session in said court house in Greensburg, and that on the second floor of the court house, on the north side thereof, known as Court Room No. 2, in which the said John Wesley Wable was being tried for murder although in the interval between the pre-

sentation of said motion for temporary restraining order and said hearing three of said court rooms had been in use in the conduct of trials.

18. The circumstances surrounding the killings for which the said John Wesley Wable is on trial were such that they attracted nation-wide publicity, and the nation-wide publicity probably resulted in the detection and apprehension of the said John Wesley Wable.

19. The trial of the said John Wesley Wable, as the phantom killer of the Pennsylvania Turnpike, which was being conducted at the time of the hearing on the motion for preliminary injunction, is also the subject of local and nation-wide publicity, and there are present in the court house in the neighborhood of one hundred witnesses, many of whom are newsworthy. Included in the persons present in the court house at the trial of said case are the defendant, John Wesley Wable, his family, persons with whom he was making his home in Cleveland, Ohio, who were instrumental in giving information to the police, police officers of Cleveland, Ohio, a pawn broker with whom he pawned the gun used in the killings, and a watch allegedly taken from one of the victims, deputy sheriffs, police officers and others who participated in a chase near Albuquerque, New Mexico, which resulted in his apprehension, county detectives who worked on the investigation, state police who worked on the investigation, ballistic experts, a tire print expert, a news photographer who photographed the decedent's truck and the accident scene immediately after discovery of the slaying, the widow and daughter of the victim, prosecution and defense counsel, the Sheriff of Westmoreland County, and the Trial Judge. Said persons, during said trial and recesses thereof, were moving in and about the corridors and portions of the court house other than the court rooms.

20. The actual trial of said defendant and the persons participating therein was the subject of widespread local and national interest.

21. The Court takes judicial notice that in the normal course of events that there will be numerous court proceedings, both criminal and civil, in which newsworthy persons will be present in the court house in Greensburg, Westmoreland County, Pennsylvania, and the testimony shows that at the May 1954 Term of Court, there are scheduled for trial in said courts and in said county a number of vote fraud trials in which there is widespread local interest.

22. Both The Tribune Review Publishing Company, the plaintiff, and P G Publishing Company, the intervening plaintiff, have substantial capital investments in news photographic equipment and printing and publishing equipment. The intervening plaintiff, P G Publishing Company, has an investment of $10,000 in photographic equipment, and makes an annual expenditure of $75,000 in the taking and publishing of pictures in the publication of its newspaper, the Pittsburgh Post Gazette.

23. David W. Mack, the individual plaintiff, as managing editor of the Greensburg Morning Review and the Greensburg Daily Tribune, makes his livelihood from the publication of said papers.

24. On March 2, 1954, upon petition of plaintiffs, The Tribune Review Publishing Company and David W. Mack, this Court issued a temporary restraining order restraining the defendant, Howard Bud Thomas, from the performance of certain acts in enforcement of the rule of court of Westmoreland County; and the said temporary restraining order was served upon the defendant on March 3, 1954 by a deputy U. S. marshal.

25. The defendant, his agents, deputies and others acting under him, have complied with the said temporary restraining order.

26. On March 9, 1954, this Court issued a "Clarification Memorandum on

Temporary Restraining Order issued on March 2, 1954" for the purpose of clarifying the intention of the Court in the issuance of the said temporary restraining order.

### Conclusions of Law

1. This Court has jurisdiction of this case because it arises under the First and Fourteenth Amendments to the Constitution of the United States and under the Act of Congress of June 25, 1948, c. 646, 62 Stat. 932, 28 U.S.C.A. § 1343.

2. The right of a free press is guaranteed by the Fourteenth Amendment to the Constitution of the United States, and is protected against invasion by the States or by State agencies.

3. The right of freedom of the press is protected by Article I, Section 7 of the Constitution of Pennsylvania.

4. The right of the public to be informed as to what is happening within its government, including its courts, is an integral part of the right of free press and free speech.

5. The right of a defendant to a speedy and public trial is definitely interwoven in the judicial systems of the United States and of the States with the guaranteed and protected right of a free press.

6. The order of regulation promulgated by the Westmoreland County Court was issued under color of state law, more particularly through authority delegated by the Supreme Court of the Commonwealth of Pennsylvania and the Legislature of the Commonwealth of Pennsylvania.

7. Since jurisdiction exists in this court, the motion to dismiss or quash the temporary restraining order must be denied.

8. To avoid needless friction with state policies, the usual rule of comity must govern the exercise of equitable jurisdiction by the United States District Court.

9. Authority exists for the petitioners to secure relief in the Supreme Court of Pennsylvania as a court of original jurisdiction.

10. The maintenance of appropriate relationship between federal and state authorities functioning as a harmonious whole requires a stay of the proceeding in this court pending determination of the state questions by the Supreme Court of Pennsylvania.

11. After determination of the questions by the Supreme Court of Pennsylvania, if either party feels aggrieved, on application to this court an adjudication will be immediately entered on, the application for preliminary injunction.

12. I conclude, therefore, that this court should retain the instant proceeding until a determination of the state question is made by the highest tribunal in the Commonwealth of Pennsylvania.

13. I shall direct that the proceeding in this court be stayed pending a decision of proceedings to be brought with reasonable promptness in the Supreme Court of Pennsylvania to have adjudicated the legality of the order or regulation issued by the Courts of Westmoreland County.

14. At such time as the issues are adjudicated by the Supreme Court of Pennsylvania, and it is believed by any of the parties that such determination conflicts with or is at variance with basic constitutional rights, upon proper application to this court. I shall immediately proceed to adjudicate the application for preliminary injunction together with the entry of Findings of Fact and Conclusions of Law.

15. If additional hearing or argument is requested by an interested party, the request will be given prime consideration on the docket of this court, after which final adjudication will be promptly entered.