Dawn Elaine BROWN, by and through Gayle (Brown) Marden, as her mother and next friend, et al., Plaintiffs-Appellants, Cross Appellees,

v.

Dixie Herlong CHASTAIN et al., Defendants-Appellees, Cross Appellants.

No. 26848.

United States Court of Appeals
Fifth Circuit.

Aug. 4, 1969.

Rehearing Denied and Rehearing En Banc Denied Oct. 2, 1969.

Tobias Simon, Miami, Fla., for appellants.

Thomas C. Britton, County Atty., John G. Fletcher, Joseph D. Komansky, Asst. Co. Attys., Miami, Fla., for appellees.

Before RIVES, BELL and DYER, Circuit Judges.

DYER, Circuit Judge:

We are here presented with the question whether the District Court had ju-

risdiction to directly review a final determination of federal constitutional questions voluntarily submitted to and decided by the state courts of Florida in connection with litigation pending in the state courts, no review by the United States Supreme Court having been sought. The District Court had no jurisdiction, and we reverse.

In 1961 Gayle and James Brown were divorced. Gayle was awarded custody of their child, Dawn Elaine Brown. In 1966 James Brown filed suit in the Juvenile and Domestic Relations Court of Dade County, Florida, and on May 8, 1967, an order was entered changing the custody of the child from the mother to the father. An appeal was filed in the Florida Third District Court of Appeal, but counsel for the mother and child soon discovered that the cost of preparing a transcript of the testimony in the lower court was beyond the financial means of the mother and child. A petition to the Juvenile Court praying that either the State of Florida or the father be required to pay for the transcript was denied; a similar petition in the Court of Appeal was denied; and finally an appeal to the Supreme Court of Florida from the order denying a free transcript was dismissed. No attempt for direct Supreme Court review of the state court decisions through certiorari under 28 U.S.C.A. § 1257 was made.

The appellants then filed their complaint in the District Court alleging that the denial by the State of a free transcript for use in their state civil appeal constituted a violation of the Due Process and Equal Protection Clauses of the Fourteenth Amendment, the very same allegation which the state courts had considered and rejected. The complaint prayed for relief in the form of a mandatory injunction requiring the State of Florida to provide a transcript at the expense of the State or the father, or alternatively to strike the order changing the custody of the child. Soon afterwards a hearing was held. In open court the parties stipulated that the

facts alleged in the complaint were correct and further that the defendants did not have to file an answer or other response. The District Court then entered judgment on the merits in favor of the defendants based on the pleadings, and this appeal ensued.

 It is obvious from the complaint and the requested relief that the appellants are here attempting to relitigate their federal constitutional claims by obtaining a form of direct federal district court review of the state decisions, since independent equitable proceedings to prevent the enforcement of a judgment are considered a direct attack upon it. *See* Restatement, Judgments § 11, comment *a* (1942). The District Court was patently without jurisdiction to engage in such a review. As noted in Rooker v. Fidelity Trust Co., 1923, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362:

> If the constitutional questions stated in the . . . [complaint] actually arose in the cause, it was the province and duty of the state courts to decide them; and their decision, whether right or wrong, was an exercise of jurisdiction. If the decision was wrong, that did not make the judgment void, but merely left it open to reversal or modification in an appropriate and timely appellate proceeding. Unless and until so reversed or modified, it would be an effective and conclusive adjudication. [Citations omitted] Under the legislation of Congress, no court of the United States other than this [the Supreme] Court could entertain a proceeding to reverse or modify the judgment for errors of that character. [Citations omitted] To do so would be an exercise of appellate jurisdiction. The jurisdiction possessed by the District Courts is strictly original. * * * *Id.*, at 415–416, 44 S.Ct. at 150.

 As stated in Pilkinton v. Pilkinton, 8 Cir. 1968, 389 F.2d 32, "[i]t is plainly evident that what appellant seeks in this original action is a review by the federal courts of the proceedings

of the . . . [Florida] State Courts in the divorce action. Federal courts are without authority to function as an appellate arm of the state courts." *Id.* at 33. The decision of a federal constitutional question by a state court does not warrant a mandatory injunction in the nature of mandamus nor an order striking its decision even if erroneous. "State courts are competent to decide questions arising under the federal constitution, and federal courts most assuredly do not provide a forum in which disgruntled parties can re-litigate federal claims which have been presented to and decided by state courts." Deane Hill Country Club, Inc. v. City of Knoxville, 6 Cir. 1967, 379 F.2d 321, 325. *See generally* Evanson v. Northwest Holding Co., 8 Cir. 1966, 368 F.2d 531; Coral Gables First Nat. Bank v. Constructors of Florida, Inc., 5 Cir. 1962, 299 F.2d 736; Hanna v. Home Ins. Co., 5 Cir. 1960, 281 F.2d 298; Norwood v. Parenteau, 8 Cir. 1955, 228 F.2d 148; Parnacher v. Mount, 10 Cir. 1953, 207 F.2d 788, cert. denied, 1954, 347 U.S. 917, 74 S.Ct. 515, 98 L.Ed. 1073; Williams v. Tooke, 5 Cir. 1940, 108 F.2d 758, cert. denied, 1940, 311 U.S. 655, 61 S.Ct. 8, 85 L.Ed. 419; Moran v. Paine, Webber, Jackson & Curtis, W.D.Pa.1967, 279 F. Supp. 573, aff'd 3 Cir. 1968, 389 F.2d 242; Lenske v. Sercombe, D.Or.1967, 266 F.Supp. 609; Chirillo v. Lehman, S.D.N.Y.1940, 38 F.Supp. 65, aff'd 1941, 312 U.S. 662, 61 S.Ct. 741, 85 L.Ed. 1108. *See also* City of Greenwood v. Peacock, 1966, 384 U.S. 808, 86 S.Ct. 1800, 16 L.Ed.2d 944; England v. Louisiana State Bd. of Medical Examiners, 1964, 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440; Angel v. Bullington, 1947, 330 U.S. 183, 67 S.Ct. 657, 91 L.Ed. 832; Jones v. Hulse, 8 Cir. 1968, 391 F.2d 198; Stevens v. Frick, 2 Cir. 1967, 372 F.2d 378; Tomiyasu v. Golden, 9 Cir. 1966, 358 F.2d 651.

■■ Appellants' reliance upon verbiage in Fay v. Noia, 1963, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837, is misplaced. *Fay* involved a habeas corpus action instituted in the federal district court as an original proceeding for which there is specific statutory authority. Habeas corpus is an exception to ordinary rules of res judicata. *See* Note, Developments in the Law—Res Judicata, 65 Harv.L.Rev. 818, 851 (1952). Neither do we consider the instant action as a collateral attack rather than direct, since appellants waived the requirement of an answer to the complaint, in which the affirmative defense of res judicata could have been pleaded, and since the defense affirmatively appeared in the body of the complaint itself.

The District Court should have dismissed the complaint for lack of jurisdiction to review the state courts' action rather than entering judgment on the merits. Therefore the case is reversed and remanded to the District Court with instructions to dismiss the complaint for lack of jurisdiction.

Reversed and remanded.

RIVES, Circuit Judge (dissenting):

Florida law provides that appeals may be taken from custody orders rendered by the juvenile courts. F.S.A. § 39.14 (1968 Supp.); *infra* Part I. Appellants ask the federal courts to decide whether Florida may, consistent with the commands of the United States Constitution, "administer this statute so as to deny adequate appellate review to the poor while granting such review to all others." Griffin v. Illinois, 1956, 351 U.S. 12, 13, 76 S.Ct. 585, 588, 100 L.Ed. 891. The district court, after declaring that it had jurisdiction over the controversy, found no transgression of constitutional rights in the administration of this statute. I would reverse in part and hold that under present Florida practice the indigent mother and child plaintiffs seeking to appeal from a change of custody order are entitled to a free transcript of the custody hearings.

A chronological review of the facts will sharpen the focus on the important constitutional considerations. In 1958 plaintiff Dawn Elaine Brown was born

to the union of plaintiff Gayle (Brown) Marden and James Brown. Three years later the natural parents were divorced and custody of Dawn Elaine was awarded by decree to the mother. On June 1, 1966, the Florida Circuit Court which rendered the divorce and custody decree transferred custody jurisdiction of Dawn Elaine to the Juvenile Court wherein James Brown filed suit for a change of custody of Dawn Elaine. *See* State ex rel. Marden v. Chastain, 197 So.2d 561 (Fla.App.1967), cert. discharged 207 So. 2d 6 (Fla.1968). On May 8, 1967, after more than a year of hearings, custody of the then 9-year-old plaintiff was awarded to her father, with whom she had not maintained a close family relationship for six years. The several hearings held prior to the final order of the Juvenile and Domestic Relations Court were recorded entirely by a court stenographer. The cost of transcribing these stenographic notes is presently $2500.00. The plaintiffs, mother and child, secured the services of Tobias Simon, Esq. and immediately appealed the order of custody change.[1]

Florida's appellate court rules require that an appellant furnish an adequate record for the appellate court or face summary dismissal of his appeal. Rules 3.3 and 3.6(a), Florida Appellate Rules, 32 F.S.A.; Brown v. Householder, 134 So.2d 801, 802–804 (Fla.App.1962). When Mr. Simon became aware of the choices facing him in compiling a record for the appeal of the custody determination, he filed a petition in the Juvenile and Domestic Relations Court requesting that either James Brown or the State of Florida be required to pay the cost of transcription of the court reporter's notes. The petition was denied on March 12, 1968. A similar petition was filed in the Third District Court of Appeals and that petition was likewise denied on April 6, 1968. Plaintiffs appealed to the Supreme Court of Florida from the order denying plaintiffs' petition. On July 16, 1968, the Florida Supreme Court dismissed the appeal without opinion but with a brief special concurrence by Justice Ervin. Ten days later plaintiffs filed a complaint in the United States District Court for the Southern District of Florida. This complaint prayed:

"* * * that this Court will take jurisdiction of the within cause and will temporarily, and upon final hearing permanently, mandatorily enjoin and require that the Defendants provide a transcript of testimony, free of charge to the Plaintiffs, within the time required by the Florida Rules of Appellate Procedure, or in the alternative, strike the order of change of custody; and that this Honorable Court grant such other and further relief as to the Court may be deemed proper." (R. 88)

Jurisdiction was alleged under 28 U.S.C. §§ 1331 and 1343. The substantive claim was subsumed under 42 U.S.C. §§ 1981–1985 and the Fourteenth Amendment to the United States Constitution. The judges of the Domestic Relations Court were made defendants. A hearing was held on August 8, 1968, and all parties there agreed that no further pleadings would be filed and that the district court could, at that point, enter final judgment. On August 19, 1968, the district court entered final judgment on the merits against the plaintiffs, as set out in the margin.[2] Notice of appeal

---

1. Appellants' brief informs us that: "By stipulation between the mother and the father, and their counsel, the child, Dawn Elaine Brown, remains in the custody of her mother pending the outcome of the pending proceeding. Moreover, on August 16, 1968, the Juvenile and Domestic Relations Court entered its order staying the time for filing the reporter's tran-

scripts of notes pending final disposition of the within cause. In brief, the status quo remains both as to custody of the child and to the appeal from the order changing custody pending disposition of the within matter." Appellees raise no question as to the statement just quoted.

2. "THIS CAUSE came on to be heard before the Court on August 8, 1968, upon

was filed August 19, 1968, followed by a notice of cross-appeal on September 18, 1968. Plaintiffs are proceeding *in forma pauperis* in this Court.

The exercise of jurisdiction by the district court is the threshold consideration in this case. The majority relies upon the doctrine of Rooker v. Fidelity Trust Co., 1923, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 to sustain its holding that the district court had no jurisdiction "to directly review a final determination of federal constitutional questions voluntarily submitted to and decided by the state courts of Florida in connection with litigation pending in the state courts, no review by the United States Supreme Court having been sought." (Majority Opinion, first paragraph). This ruling, ostensibly a jurisdictional one, alloys doctrines of jurisdiction (power) and abstention (discretion) into an absolute bar prohibiting plaintiffs from fully litigating their constitutional claims in a federal forum. I would hold that the district court had jurisdiction pursuant to 28 U.S.C. § 1343 and that its exercise of such jurisdiction was entirely appropriate under the circumstances presented by this record. For the sake of clarity in the delicate area of federal-state relationships, I shall discuss separately, first, the district court's power to adjudicate this dispute and, second, the propriety of the exercise of such power in the light of limiting principles. *See* 1B J. Moore, Moore's Federal Practice ¶ 0.407 n.20 and text, p. 934 (1965). *Cf.* Bell v. Hood, 1946,

the Complaint and the Plaintiffs' application for temporary injunction.

"Briefly, the Plaintiffs (mother and minor child) allege that an Order was entered by the Juvenile and Domestic Relations Court in Dade County, Florida, presided over by the Defendant Judges, transferring the custody of the minor from her mother to that of her father; that they have appealed that decision to the District Court of Appeal of Florida; that to perfect the appeal they require a transcript of the testimony adduced in the trial court, but the $2500.00 cost thereof is beyond their means by reason of their indigency; that they have exhausted all state remedies in seeking to procure a copy of said transcript at the expense of the State of Florida.

"In open Court the parties, through their counsel, stipulated that the facts as alleged in the complaint were correct including without limitation the facts relating to the indigency of the plaintiffs; (subject only to the reservation that the defendants deny the exhaustion of state remedies by the plaintiffs by reason of their not having made application to the Supreme Court of the United States for a Writ of Certiorari to the Supreme Court of Florida by reason of the latter Court's denial of the very relief sought herein. This Court does not regard this difference as material to the questions of this Court's jurisdiction or the merits of the controversy between the parties.) The parties further stipulated that the defendants did not have to file an Answer or other response to the Complaint, and that based upon the pleadings and stipulations this Court could and should at this time enter a Final Judgment upon the issues presented.

"This Court having considered the pleadings and the stipulations and having been fully advised in the premises, finds and orders as follows:

"1. The Plaintiffs are indigents and do not have the funds to procure the transcript of testimony asserted by them as necessary to perfect their appeal from the Order of the Transfer of Custody in the State Courts of Florida.

"2. The rights claimed by the plaintiffs are neither frivolous nor merely colorable assertions of United States Constitutional Rights. They are not mere matters of form. Therefore, this cause has not been dismissed for want of jurisdiction. Federal jurisdiction exists.

"3. Nevertheless, this Court is persuaded that on the facts presented the Plaintiffs have no federal right and they are not entitled by the Constitution of the United States to the relief sought herein.

"Final Judgment in the within cause be and the same is hereby entered in favor of the Defendants and against the Plaintiffs.

"DONE AND ORDERED at Miami, Dade County, Florida this 19 day of August, 1968.

/s/ JOE EATON
United States District Judge."
(R. pp. 102–104.)

327 U.S. 678, 686, 66 S.Ct. 773, 90 L. Ed. 939.

## A. JURISDICTION

The essence of judicial jurisdiction is power to affect legal relations. The sources of the federal courts' power are Article III of the United States Constitution and the various statutes enacted by Congress which make the federal courts competent to adjudicate certain disputes. In determining the narrow question whether the federal district court had jurisdiction to adjudicate the Brown complaint, this court should limit its inquiry to the sources of jurisdiction and merely decide whether this dispute is one described by the grant of power. See M. Rosenberg and J. Weinstein, Elements of Civil Procedure, p. 997 (1962). I submit, with all deference, that the majority has inappropriately looked beyond considerations of power and has relied upon doctrines of limitation upon the exercise of jurisdiction in holding that the authority of the federal courts cannot reach this dispute.[3]

28 U.S.C. § 1343 provides:

The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:

\* \* \* \* \* \*

(3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States;

(4) To recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights, including the right to vote.

A plaintiff under 28 U.S.C. § 1343 is required to ground his complaint on the Constitution and/or a specified type of Congressional enactment. The instant complaint alleges deprivation of rights secured by the Fourteenth Amendment and by 42 U.S.C. § 1983.[4] The principle of construction necessary to bring appellants' claim within the jurisdictional grant has been clearly stated by Judge Gourley:

"A state may act through different agencies, either by its legislative, its executive, or its judicial authorities; and the prohibitions of the Fourteenth Amendment to the Constitution of the United States extend to all action of the State denying equal protection of the laws, whether it be action by the legislative, executive or judicial branch of the State government. Congress may enforce the prohibitions whenever they are disregarded by any branch of the State government. The mode of enforcement is left to the discretion of Congress.

"The constitutional provisions of the Fourteenth Amendment, therefore, means [sic] that no agency of a state

3. Whether the power of the federal district court should be exercised is a problem entirely separate from the question of jurisdiction. I do not accord any slight attention to considerations of finality or federalism or other doctrines of discretion. Rather, I think it important to weigh these considerations in their proper context as elements which determine the *exercise*, not the existence, of jurisdiction. *See* Part B. Cf. American Law Institute, Study of the Division of Jurisdiction Between State and Federal Courts, pp. 67–74 (Tent. Draft No. 6, 1968).

4. "The jurisdiction of this Court is invoked pursuant to the provisions of 28 U.S.C. § 1331; 28 U.S.C. § 1343; 42 U.S.C. §§ 1981–1985; and the Fourteenth Amendment to the Constitution of the United States.

"The actions of the Florida Courts in denying a transcript of testimony, free of charge, to the Plaintiffs herein, constitutes a denial of due process of the laws and equal protection of the laws as guaranteed by the Fourteenth Amendment to the Constitution of the United States; the Plaintiffs are being deprived of their ability and right to appeal solely by reason of their indigency."

or of the officers or agents by whom its powers are asserted, and this includes the judicial branch of the government, shall deny to any person within this jurisdiction the equal protection of the laws. Therefore, any person, regardless whether it be the legislative, executive or judicial branch of the government, who by virtue of his public position under a State government, deprives another of property, life, or liberty, without due process of law, or denies or takes away the equal protection of the laws, violates the constitutional inhibition."

Tribune Review Publishing Co. v. Thomas, 120 F.Supp. 362, 369–370 (W.D.Pa., 1954). Appellants allege that the acts of Judges Chastain, Weaver and Stone of the Juvenile and Domestic Relations Court have deprived them of rights secured by the Fourteenth Amendment and 42 U.S.C. § 1983. With deference to my brothers, whose ruling purports to explore only jurisdiction, I submit that the narrow question of jurisdiction is whether the federal court has been authorized by Congress and the Constitution to affect the state of relations between the parties. The district court found:

> "The rights claimed by the plaintiffs are neither frivolous nor merely colorable assertions of United States Constitutional rights. They are not mere matters of form. Therefore this cause has not been dismissed for want of jurisdiction. Federal jurisdiction exists."

Brown v. Chastain (No. 68–885–Civ–JE, August 19, 1968). Standing together with the factual allegations in the complaint relating to the effective denial of appellate court access, plaintiffs' jurisdictional assertions are not wholly insubstantial or frivolous. See Bell v. Hood, 1946, 327 U.S. 678, 682, 66 S.Ct. 773, 90 L.Ed. 939; Rogers v. Provident Hospital, 241 F.Supp. 633, 636 (N.D.Ill., 1965). And plaintiffs have described a state of legal affairs encompassed by the congressional and constitutional language granting power to the federal district courts. I would, therefore, resolve the narrow question of jurisdiction in favor of affirming the district court. See Tribune Review Publishing Co. v. Thomas, supra, 120 F.Supp. at 371–372; Howard v. Ladner, 116 F.Supp. 783 (S.D. Miss., 1953), judgment vacated sub nom. White v. Howard, 1954, 347 U.S. 910, 74 S.Ct. 476, 98 L.Ed. 1067 (per curiam). Cf. Bell v. Hood, supra.[5]

## B. LIMITATIONS ON THE EXERCISE OF JURISDICTION

(1) *The Principle of Estoppel by Judgment*

I would hold that the principle of estoppel by judgment has no application to this case. First, the majority's denomination of plaintiffs' complaint as a *direct* attack upon a state court judgment does not seem to me to be sound. The judgment which will ultimately deprive appellants of the equal protection of the laws, i. e., the child custody determination, has not yet been rendered. If review without a transcript of testimony occasioned solely by the indigency of the appellants is constitutionally

5. The language and history of 28 U.S.C. § 1343 underscore the importance of this head of jurisdiction and the latitudinarian assumptions of jurisdiction under it. This grant of power to the federal courts has its roots in the post-bellum Civil Rights Acts. See Hague v. C.I.O., 1939, 307 U.S. 496, 508, n. 10, 59 S.Ct. 954, 83 L.Ed. 1423. Nearly a decade before the Congress conferred federal question jurisdiction upon the federal courts, it exercised power under section 5 of the Fourteenth Amendment for the express purpose of securing the rights guaranteed to the people by that Amendment. Cf. Dorsey v. N.A.A.C.P., 5 Cir., 1969, 408 F.2d 1022. Although much doubt has been cast upon the need for general federal question jurisdiction in federal courts, the civil rights jurisdiction of 28 U.S.C. § 1343 stands secure as the prime instrument for prompt vindication of national rights. See H. Wechsler, Federal Jurisdiction and the Revision of the Judicial Code, 13 Law and Contemp.Probs. 216 (1948).

impermissible, there is still time to prevent such a denial of constitutional rights without reversing or vacating the state court's determination of custody. So long as that judgment has not resulted in a denial of equal protection or due process, there remains time for a concurrent exercise by the federal courts of their undoubted power and duty to protect those federal constitutional rights.[6]

Second, even if appellants' actions can be labeled as a direct attack, res judicata should not attach to the state court judgment because it is not a final judgment of constitutional claims voluntarily submitted to state court adjudication. The proper place for obtaining the transcript was the Juvenile and Domestic Relations Court, which Mr. Simon petitioned originally. Failing that, he turned to the court to which the appeal would be taken: the District Court of Appeal. No other state agency could afford appellants a transcript, and surely they could not petition the federal court without first requesting relief from the state under its own procedural rules. Thus, when appellants requested the state judiciary to give them a transcript, they were merely invoking necessary state procedures and were not making a studied choice of forum for vindication of their constitutional rights. Moreover, this judgment lacks the finality requisite for res judicata purposes. *See* generally Moore, *supra* ¶ 0.409. The litigation which was concluded in the Supreme Court of Florida is little more than an advisory opinion which will be the law of the case in the child custody appeal. The source of appellants' claimed deprivation of constitutional rights is not the adjudication upon the interlocutory request for a free transcript, but the impending determination of the appeal from the change of custody order. So long as that appeal remains undetermined, I would hold that res judicata cannot preclude the federal courts from acting upon appellants' requests.[7]

---

6. Appellants' approach can be likened to a collateral attack upon the ancillary litigation over the burden of costs of a transcript of testimony. It is arguable that appellants are complaining that the state court judgment on the child's custody will amount to nothing more than "judicial wastepaper." *See* Moore, *supra*, at p. 934. The federal courts surely have power to remedy this situation by exercising concurrent jurisdiction to review *collaterally* an order amounting to a nullity in constitutional terms. *Cf.* Williams v. Tooke, 5 Cir. 1940, 108 F.2d 758, 759.

Apparently Judge Eaton was convinced that appellants were not seeking appellate relief in the district court. During the course of the hearing he remarked:

"He is not asking me to review the State Court's ruling. This is a common mistake that lawyers make.

"He is asking me to carry out the mandate of the Constitution of the United States and certain Federal statutes. He is not asking me to consider whether or not Florida is right or wrong on the subject.

"Lawyers and judges who do not really understand this want to run down and holler all the time that the Federal Court is reviewing the work of the Supreme Court of Florida. That is not true. It comes up most of the time on State prisoners in habeas corpus hearings. That is a good example.

"A fellow brings a Rule 1 and goes to the District Court and he is turned down after he has been turned down by the Trial Court and the Supreme Court of Florida denies, then he comes into the Federal Courts and every now and then the Federal judge finds he has to afford him some relief and when he does, people scream and holler that the one judge is more important than all the State Justices, and there is something wrong with the system.

"What they do not understand, it is a Federal matter that is being considered, the Federal Constitution, the United States Constitution. That is what Federal Courts are for, but they do under the Comity Clause law that the State consider it first. (*sic*) They do not simply turn the United States Constitution over to the State Courts, so we are not talking about reviewing anything. We are talking about initial thrust under the matters arising out of the Federal Law which is not a question of review."

7. Because the Supreme court of Florida affirmed the lower courts without an opin-

Assuming, *arguendo*, that the majority's label is correct and that appellants' claims were voluntarily submitted to and adjudicated by the state courts, the majority's reliance upon the no-relitigation rule of, *Rooker, supra,* requires extensive comment. It is important to note at the outset that the *Rooker* doctrine is *not* an exception to or limitation upon the original jurisdiction of the federal courts, for once the jurisdiction has been granted, only Congress or the people by constitutional amendment can constrict it. U.S.Const., Art. III. *See, e. g., id.,* Amend. XI. Rather, the doctrine is a limitation on the discretion of the federal courts to exercise their jurisdiction. The difference between dismissing a claim because of a lack of power and dismissing a claim because of limited discretion to exercise jurisdiction may, at first blush, seem academic. I submit, however, that, unlike decisions involving rigid interpretations of jurisdictional statutes, determinations of proper exercise are tempered by considerations of efficient administration of justice, a solicitous regard for fundamental rights, and the traditional discretion of the chancellor. The principle of estoppel by judgment must be treated in proper perspective—as a limitation on the "federal courts" discretion to exercise jurisdiction. *Cf.* Tribune Review Publishing Co. v. Thomas, *supra*; Fay v. Noia, 1963, 372 U.S. 391, 415–420, 83 S.Ct. 822, 9 L.Ed. 2d 837.

*Rooker* and the other cases cited by the majority plainly speak in terms of estoppel by judgment, that is, res judicata or collateral estoppel. The *ratio decidendi* of those cases is clearly an outgrowth of 28 U.S.C. § 1738 and its common law antecedents.[8] Although I do not doubt the continuing validity of the principle of estoppel as a limitation on the exercise of power by the federal courts, *see, e. g.,* Dade County Classroom Teachers Ass'n, Inc. v. Nathan, 5 Cir. 1969, 413 F.2d 1005, I would restrict the application of that principle in cases premised on 28 U.S.C. § 1343 and 42 U.S.C. § 1983. A careful analysis of cases applying the *Rooker* doctrine reveals that most of the federal complaints were grounded upon 28 U.S.C. § 1331, the general federal question jurisdiction. *See, e. g.,* Warriner v. Fink, 5 Cir. 1962, 307 F.2d 933, 936; Tomiyasu v. Golden, 9 Cir. 1966, 358 F.2d 651. Moreover, those cases where jurisdiction was premised upon 28 U.S.C. § 1343 did not in-

ion, it is difficult to tell whether the constitutional questions were litigated to finality in the state courts. Such doubt may preclude application of res judicata to the state court determination. *Cf.* Olson v. Board of Education, etc., 250 F.Supp. 1000, 1005 (E.D.N.Y., 1966), appeal dismissed 367 F.2d 565 (2 Cir. 1966). In addition, it is doubtful whether the Florida Supreme Court's judgment exhibits sufficient finality to support a writ of certiorari from the Supreme Court of the United States pursuant to 28 U.S.C. § 1257. *See* Republic Natural Gas Co. v. Oklahoma, 1948, 334 U.S. 62, 67, 68 S.Ct. 972, 92 L.Ed. 1212; Mills v. Alabama, 1966, 384 U.S. 214, 86 S.Ct. 1434, 16 L.Ed.2d 484; Mercantile National Bank v. Langdeau, 1963, 371 U.S. 555, 572–575, 83 S.Ct. 520, 9 L.Ed.2d 523 (Harlan, J., dissenting). *See generally,* C. Wright, Federal Courts § 107 (1963).

**8.** No issue under the Full Faith and Credit Clause is presented by the case at bar since that clause is limited by its terms to interstate judicial relations. U.S. Const., Art. IV, § 1. In 28 U.S.C. § 1738 and its predecessors Congress exercised its power under the Clause to make prior state court judgments binding on federal courts as well as state courts. Davis v. Davis, 1938, 305 U.S. 32, 40, 59 S.Ct. 3, 83 L.Ed. 26; Wayside Transportation Co. v. Marcell's Motor Express, Inc., 1 Cir., 1960, 284 F.2d 868, 870–871; Annot., 17 L.Ed.2d 952, 953, n. 3 (1966). Although the constitutional underpinnings of this statute go no further than interstate judgments, the courts have interpreted 28 U.S.C. § 1738 as a general embodiment of the doctrine of res judicata applicable to interstate and intrastate judicial relations. *See, e. g.,* Gart v. Cole, 166 F.Supp. 129 (D.C.N.Y.), aff'd. 2 Cir. 1959, 263 F.2d 244. Nonetheless, section 1738 cannot be viewed as a jurisdictional statute withdrawing power from the federal courts. Rather it is a codification of a venerable limit upon the discretion of courts to exercise their power.

volve human liberty. *See, e. g.*, Camacho v. Rogers, 199 F.Supp. 155, 157 (S.D.N.Y., 1961) (three judge court); Deane Hill Country Club, Inc. v. City of Knoxville, 6 Cir. 1967, 379 F.2d 321, 325 (dicta). Thus, I would give limited effect to the principle of estoppel by judgment in cases significantly involving human liberty and premised upon 28 U.S.C. § 1343. Not only do I find the civil rights jurisdiction a "compelling basis" for an exception to the rigorous bar of res judicata, *see* Manufacturers Record Pub. Co. v. Lauer, 169 F.Supp. 234, 240 (E.D.La., 1959); Wechsler, *supra*, but I regard the personal liberty of this 11-year-old appellant as far too precious to be jeopardized by a genuflective response to an exceptionable rule of discretion.

42 U.S.C. § 1983, which is one of the bases for appellants' complaint, created substantive national rights redressable in a federal forum. Hague v. C.I.O., *supra*, 327 U.S. at 529, 59 S.Ct. 954 (Stone, J., Concurring); McNeese v. Board of Education, etc., 1963, 373 U.S. 668, 672, 83 S.Ct. 1433, 10 L.Ed.2d 622; Beauregard v. Wingard, 230 F.Supp. 167, 185 (S.D.Cal., 1964) (dictum). Barring the federal courts from hearing claims arising out of the national civil rights statutes would neither serve the needs of comity nor promote harmonious federal-state relationships. *Cf.* Note, Res Judicata: Exclusive Federal Jurisdiction and the Effect of a Prior State Court Determination, 53 U.Va.L.Rev. 1360· (1967). As support for my position at least three circuits, including this one, have opaquely suggested that the *Rooker* res judicata principle is inapplicable to actions involving 42 U.S.C. § 1983.[9] Moreover, there is a line of authority holding that "A determination of a federal constitutional question by a state tribunal is not conclusive if there is no right of appeal to the federal courts." Garland Co. v. Filmer, 1 F.Supp. 8, 12 (N.D.Cal., 1932). *See* Angel v. Bullington, 1947, 330 U.S. 183, 189 and 205, fn. 11, 67 S. St. 657, 91 L.Ed. 832 (Rutledge, J., dissenting). Since appellants' only path to the Supreme Court is by certiorari, and not by appeal, *see* 28 U.S.C. § 1257, there is little certainty that appellants' claims will ever be passed upon by federal judges. In the light of the limited applications of *Rooker* and the special regard which the cases have shown for full and prompt vindication of special national rights, I would hold that the district court did not abuse its discretion in exercising jurisdiction under 28 U.S.C. § 1343.[10]

(2) *The Principles of Federalism*

Appellees argue that the federal court cannot assume jurisdiction of this dispute until appellants file in the Supreme Court of the United States a petition for certiorari to the Supreme Court of Florida. This argument presents a problem

9. O'Connor v. O'Connor, 5 Cir. 1963, 315 F.2d 420, 422; Hardy v. Northwestern Federal Saving and Loan Association, 1957, 102 U.S.App.D.C. 371, 254 F.2d 70; Jenson v. Olson, 8 Cir. 1965, 353 F.2d 825, 827; Hanna v. Home Ins. Co., 5 Cir. 1960, 281 F.2d 298, 303. But *cf.* Frazier v. East Baton Rouge Parish School Board, 5 Cir. 1966, 363 F.2d 861 (dicta).

10. An analogy to the Great Writ lends support to my position. Had appellant Marden transferred custody of her child to her former husband, both she and the child could then test the husband's custody by using the writ of habeas corpus. F.S.A. § 79.01 (1969 supp.); *see e. g.*, Trotman v. Thomas, 154 Fla. 71, 16 So. 2d 640, 641 (1944); *see generally,* 39 C.J.S. Habeas Corpus §§ 41–42 (1944); *cf.* Harris v. Nelson, 394 U.S. 286, 89 S.Ct. 1082, 22 L.Ed.2d 281 (March 24, 1969). On habeas corpus appellants would be afforded plenary federal adjudication of their constitutional claims since habeas is, as the majority recognizes, a settled exception to the rules of res judicata. Brown v. Allen, 1953, 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469. *Cf.* Bator, Finality in Criminal Law and Habeas Corpus for State Prisoners, 76 Harv.L.Rev. 441 (1963). It would be somewhat anomalous—and most assuredly traumatic for Dawn Elaine Brown— to postpone federal jurisdiction until after the end of the state appellate process, the constitutionality of which is being drawn into question.

of federal-state comity. *Cf.* Fay v. Noia, *supra,* 372 U.S. at 428, 83 S.Ct. 822. I find no persuasive authority for the proposition that appellants should be required to exhaust federal appellate remedies before invoking original jurisdiction under 28 U.S.C. § 1343. Although state administrative remedies must usually be exhausted before invoking federal jurisdiction, the same rule does not strictly apply to judicial proceedings unconnected with an administrative scheme. Lane v. Wilson, 1939, 307 U.S. 268, 274, 59 S.Ct. 872, 83 L.Ed. 1281; McGuire v. Sadler, 5 Cir. 1964, 337 F.2d 902, 906. *See generally* 1 Barron & Holtzoff, Federal Practice § 65 (Wright ed. 1950 with 1968 supp.). *But cf.* Alabama Public Service Comm. v. Southern Ry. Co., 1951, 341 U.S. 341, 348–350, 71 S.Ct. 762, 95 L.Ed. 1002. In the case at bar prompt vindication of appellants' rights is necessary so that the child can be afforded a stable family relationship. There is no compelling reason why the federal court should stay its hand because of appellants' failure to pursue a doubtful remedy.

The second argument based upon principles of federalism urges that the merits of this case are more appropriate for determination by a legislature. Although I do not quarrel with the proposition that the legislatures are the repositories of general rulemaking authority, I must emphasize that the judiciary, as an independent branch of government, is burdened by the Constitution with the duty of vindicating individual rights. U.S. Const., Art. III. Abstention in this case for the purpose of allowing a legislative body to establish "a more equitable system of jurisprudence" would be tantamount to an unlawful abdication of a constitutional duty. *Cf.* City of Altus, Oklahoma v. Carr, 255 F.Supp. 828 (W. D.Tex., 1966) (three-judge court). *But cf.* Boddie v. State of Connecticut, 286 F.Supp. 968, 973 (D.Conn., 1968) (three-judge court) cert. granted 395 U.S. 974, 89 S.Ct. 2138, 23 L.Ed.2d 763.

Appellees' final argument grounded on the principle of federalism concerns the question whether the district court could "issue an injunction compelling state court action, where the issue involved has proceeded through the state court system to a final determination." Although this language in appellees' brief smacks of the *Rooker* rationale, appellees rely upon the general anti-injunction statute, 28 U.S.C. § 2283.[11] Assuming for present purposes that the relief prayed for in the complaint is that type of injunction contemplated by section 2283,[12] I would hold that 2283 does not bar appellants' requests.

There are two reasons why I think section 2283 is not a bar to these proceedings. First, the injunctive relief in this case is sustainable as "necessary in aid of" the "jurisdiction" of the district court.[13] Jurisdiction of a case under 28 U.S.C. § 1343 necessarily includes the power to enter a judgment having a

11. § 2283. *Stay of State Court proceedings*

A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.

12. The term "proceedings" in this section has been defined with the greatest degree of latitude and includes "all steps taken or which may be taken in the state court or by its officers from the institution to the close of the final process." Hill v. Martin, 1935, 296 U.S. 393, 403, 56 S.Ct. 278, 282, 80 L.Ed. 293. The fact that appellants ask for a mandatory injunction rather than a negative one does not necessarily except them from the requirements of section 2283, if the injunction has the effect of interfering in the state's judical processes. Moreover, appellants pray for general equitable relief, which, under the circumstances here, might include a stay of the state court appeal until appellants' rights are fully protected.

13. The statutory exception at issue here has not been defined with a great degree of precision. Two guides to determining when injunctive relief is "in aid" of the court's jurisdiction may be useful. First, the Reviser's Note to section 2283 points out that an injunction should be allowed in any case in which it would be allowed under the All Writs Act, 28 U.S.C. § 1651. Since that statute allows injunc-

desired effect upon the parties before the court. In this case, injunctive relief is necessary in aid of the federal court's independent jurisdiction to protect rights ancillary to the merits of the child custody determination. I do not construe "in aid of its jurisdiction" so as to make the exception swallow the rule. In cases where federal court jurisdiction is predicated on nothing more than wrongful disposition on the merits, the exception would not apply since the district court cannot, in any event, exercise appellate jurisdiction over valid state court judgments. *Rooker, supra.* It is only where, as here, the plaintiffs are being deprived of federally protected rights *independent of the disposition on the merits of the state custody case* that the federal court can inhibit state proceedings in aid of its original jurisdiction to vindicate those rights. Whereas *Rooker* and its offspring were direct attacks upon state court judgments tantamount to appellate review, this case is an exercise of original jurisdiction attacking the propriety of Florida's reaching a determination on the merits. To hold in this case that section 2283 can render ineffective the federal court's jurisdiction would be to ignore the command of the statutory exception: "in aid of its jurisdiction."

The second reason why I think section 2283 is not a bar to the present relief is that, in my view, 42 U.S.C. § 1983 constitutes an express exception to section 2283. This question has been left unresolved by the Supreme Court on more than one occasion. Dombrowski v. Pfister, 1965, 380 U.S. 479, 484, n. 2, 85 S.Ct. 1116, 14 L.Ed.2d 22; Cameron v. Johnson, 390 U.S. 611, 88 S.Ct. 1335, 20 L.Ed.2d 182. Although cognizant of the wealth of authority opposed to my position, I remain firmly of the view that under the circumstances of this case, if the allegations are proved, section 1983 is an express exception to section 2283. My views are set forth fully in Cameron v. Johnson, 262 F.Supp. 873, 882–887 (dissenting opinion), aff'd 390 U.S. 611, 88 S.Ct. 1335, 20 L.Ed.2d 182 (1968). I would affirm the assumption of jurisdiction by the district court.

### THE MERITS

Because I would affirm the district court to the extent of its jurisdictional holding, I must necessarily review the rest of the district court's order. My approach to the merits of this case involves the examination of two major propositions: First, that appellants are being afforded an inferior right to appeal because of their indigency; and second, that the relegation of appellants to an inferior appellate position amounts to an abridgement of the Fourteenth Amendment.

### I.

I begin with an examination of current Florida appellate practice. F.S.A. § 39.-

---

tions which encroach on the powers of the state courts (subject, of course, to substantial considerations of federalism) reliance on the Reviser's Note alone should be sufficient for our definitional purposes. See 28 U.S.C.A. § 1651, n. 300 (1964 ed.) and Note, Federal Power to Enjoin State Court Proceedings, 74 Harv.L.Rev. 731, 734, n. 67 (1961).

A second guide may be culled from the rather sparse case law speaking to this problem. This Court has held that injunctive relief in aid of jurisdiction is necessary where there is the likelihood of "any action that would render the court's order ineffective," D. G. Bland Lumber Co. v. N.L.R.B., 5 Cir. 1949, 177 F.2d 555, 558–559. *But cf.* T. Smith & Son,

Inc. v. Williams, 5 Cir. 1960, 275 F.2d 397, 407. The third Circuit has held that "If the enjoined state proceeding would not prejudice any otherwise proper disposition of some claim pending in the federal suit, the injunction cannot be in aid of invoked federal jurisdiction." Jos. L. Muscarelle, Inc. v. Central Iron Mfg. Co., 3 Cir. 1964, 328 F.2d 791, 794. *Cf.* F.T.C. v. St. Regis Paper Co., 7 Cir. 1962, 304 F.2d 731, 733–734. In the case sub judice it is apparent that substantial prejudice to the federal district court's decree would result from a prohibition upon the suggested injunctive relief. Any vindication of plaintiffs' rights without injunctive relief would be, at most, an empty gesture.

14 [14] is the basis for appellate jurisdiction in the case *sub judice*. Although that statute contemplates by its own terms an appeal with "no briefs or papers other than the juvenile court file," [15] the Florida courts have held this provision superseded by the Florida Appellate Rules which provide: "these rules shall supersede all conflicting rules and statutes." Rule 1.4, Fla.App.Rules, 32 F.S.A. (1967). *See* A.N.E., J.A.A., S.L.W., & W.C.S. v. State, 167 So.2d 769, 770 (Fla.App.1964). *Cf.* In Interest of D.A.W., 193 So.2d 433, 434 (Fla.1967). In matters pertaining to the record on appeal in child custody cases, therefore, the Florida Appellate Rules control.

### Rule 3.6 Record on Appeal

a. *What Constitutes.* The record-on-appeal shall consist either of an original record or a transcript of record, or a stipulated statement prepared in accordance with these rules. 32 F.S.A., Rule 3.6(a) (1967 ed.)

To overcome a summary dismissal, an appellant has three choices in compiling a "record on appeal".[16] He may submit an original record, a transcript of record, or a stipulated statement. The rule, which is phrased in mandatory language, does not contemplate substitution for these choices. Therefore, this court would not have to remand this case for a determination of whether the appellants could have employed an adequate, nonstatutory substitute for the "record on appeal". Florida has made this determination by mandating that one of these three types of record must be used.

Nor is remand necessary to determine whether the statutory substitutes, a transcript of record and a stipulated statement, are adequate substitutes for the original record. First, the transcript of record is authorized only "If the parties shall so stipulate, or if the judge of the lower court is of the opinion that the original papers in the case should be kept in the trial court pending the appeal for use in the trial of other litigation or for other valid reasons. * * *" Rule 3.6, subd. g(1), Fla.App.Rules, 32 F.S.A. (1967). Since the State of Florida has not argued that a transcript of record would be appropriate in this case, I assume that it is not an adequate substitute under the instant facts. Once the appellants have colorably alleged deprivation of a constitutional right, the burden of showing an adequate substitute is better placed on the State. *Cf.* Griffin v. Illinois, 1956, 351 U.S. 12, 24–25, 76 S.Ct. 585, 100 L.Ed. 891 (Frankfurter, J., concurring). The second statutory record is a stipulated statement. Rule 3.6, subd. h, Fla.App.Rules, 32 F.S.A. (1967). In this case, however, arrival at a stipulated statement of the original hearing would be a Herculean task hampered by an unusual conflict of interest. The lawyer who represented the plaintiffs in the original hearing is presently employed by the State's legal system. Without disparaging that attorney in any way, it suffices to say that he could not be in a much more awkward position were he to attempt a stipulation with appellants' present lawyer.[17] I

---

14. "(1) Any child and any parent or legal custodian of any child affected by an order of the juvenile court, excluding such order as the judge may make as committing magistrate, may appeal to the appropriate district court of appeal. * * *" 1A F.S.A. § 39.14(1) (1968 supp.)

15. F.S.A. § 39.14(8) (1969 supp.)

16. The Florida courts have repeatedly held that errors not adequately presented to an appellate court will not be considered. *See, e. g.,* State v. Hodges, 169 So.2d 359, 360 (Fla.App.1963) and Bolick v. Sperry, 82 So.2d 374, 376 (Fla.1955).

17. Even if it were possible to attain a stipulated statement of the original hearing, such a statement, if forced upon indigents, in a child custody case involving a large record of hotly contested facts is subject to serious constitutional doubt. The Florida courts have pointed out that stipulations are generally useful when no stenographic record is available. Turnipseed v. Turnipseed, 158 So.2d 808, 813 (Fla.App.1963). In addition, it only repeats the obvious to say that stipulations could not be too useful in cases which, by their nature as complex factual disputes, cannot be simplified by "even the most

also find significant the fact that appellants' present attorney, Mr. Simon, entered the case after the custody hearings, but before the appeal from the custody order. The Supreme Court of the United States has held as a matter of statutory construction that new counsel on appeal in federal courts must get a transcript of prior proceedings in order effectively to represent his client. Hardy v. United States, 1964, 375 U.S. 277, 84 S.Ct. 424, 11 L.Ed.2d 331. The Fourth Circuit has expressed my thoughts on this subject: "In a direct appeal * * * a full transcript of the trial would be the basic starting point for any lawyer undertaking to handle the appeal if he had not participated in the trial." United States v. Shoaf, 4 Cir. 1964, 341 F.2d 832, 834–835. Without full knowledge of the complexities which inhere in a bitterly contested custody case, Mr. Simon was not in an ideal position to bargain with the State's attorney over the contents of a stipulation. *Cf.* Gardner v. California, 393 U.S. 367, 89 S.Ct. 580, 21 L.Ed.2d 601 (January 20, 1969). I, therefore, conclude that an original record is the only means by which the appellants can effectively prosecute their state appeal. The question remains whether the lack of a transcript of the testimony in that record relegates appellants to an inferior right of appeal.

I am mindful of the Florida cases holding that a transcript is not necessary to prosecute an appeal. *See e. g.,* Moyer v. Moyer, 114 So.2d 638 (Fla.App.1959). However, proceeding on the premise that errors not adequately presented to a Florida appellate court will not be considered, *infra,* note 16, I find significant the fact that none of the cases holding transcripts dispensable involved complex fact determinations resulting in an adjudication of fundamental rights. The fact that such determinations are made in a civil proceeding does not in any way derogate from the importance of that adjudication. With regard to such importance, I would liken this appeal to the function of habeas corpus.[18] I would

fair-minded protagonists." *Ibid.* Finally, the Supreme Court of the United States has repeatedly said that once a state provides for appellate review, " * * * the duty of the State is to provide the indigent as adequate and effective an appellate review as that given appellants with funds—the State must provide the indigent defendant with means of presenting his contentions to the appellate court which are as good as those available to a non-indigent defendant with similar contentions." Draper v. Washington, 1963, 372 U.S. 487, 496, 83 S.Ct. 774, 779, 9 L.Ed.2d 899. One can seriously question whether any stipulated statement can be an effective substitute for a transcript in a lengthy and disputed child custody case. See also Griffin v. Illinois, 1956, 351 U.S. 12, 19, 76 S.Ct. 585, 100 L.Ed. 891. *Cf.* Van Scoyoc v. York, 173 So.2d 483, 485–486 (Fla.App.1965) and cases cited *infra,* fn.

18. I cannot blind myself to the similarities between the primary function of the Great Writ and the duties imposed upon an appellate court in a child custody case, *supra,* n. 10. Just as habeas corpus, nominally a civil remedy, is the guardian of the greatly treasured liberty of the person, a child custody proceeding also amounts to far more than an ordinary civil action between private parties. Manifestly, the object of such a proceeding is the best interests of the child, and the pursuit of that object entails in most cases fact determination based upon complete testimonial evidence. *See, e. g.,* In re Forslund, 1963, 123 Vt. 341, 189 A. 2d 537, 2 A.L.R.3d 1379, 1382. Actions by the state designed to sever the parental bond must be subjected to the most careful scrutiny. Denominating this action as civil cannot, by some talismanic effect blind us to the fundamental importance of the values at stake here. Indeed, the relationship of mother and child, particularly during a female child's formative years, is a core concept of modern society. I, therefore, find significant the fact that this civil appeal is one of public importance involving directly and materially the life, liberty and pursuit of happiness of an eleven year old girl. *See also* Part II.

The analogue to habeas corpus is also useful to demonstrate that the child is a proper party to this proceeding and that her mother can sue on the child's behalf. The federal habeas statute provides that either the detained person or someone on his or her behalf may apply for the writ. *See* 28 U.S.C.A. § 2242, Notes of Decisions, No. 5 (1959). Dispositive of the

conclude, in light of Florida's appellate practice and the importance of child custody determinations, that the absence of a transcript in the record on appeal would afford the appellants an inferior basis for appellate review of the juvenile court's order. The question is now narrowed to whether this inferior right of appeal comports with the dictates of the Fourteenth Amendment.

## II.

I would hold that appellants are being deprived of rights guaranteed to them by the Equal Protection Clause of the Fourteenth Amendment. Florida has applied its appellate rules to appellants so as to deprive them of equal protection of the laws. Although the Fourteenth Amendment, by its terms, does not distinguish between civil and criminal cases, the courts have rarely used the equal protection clause to strike down discrimination based on a man's financial status in cases involving access to appellate review in civil matters. *See* Griffin v. Illinois, *supra*; Boddie v. State of Connecticut, *supra*. Recently the civil-criminal distinction has been discarded when, on habeas corpus, a man's continued incarceration in a penal institution was at issue. Smith v. Bennett, 1961, 365 U.S. 708, 712, 81 S.Ct. 895, 6 L.Ed. 2d 39; Long v. District Court etc., 1966, 385 U.S. 192, 194, 87 S.Ct. 362, 17 L.Ed. 2d 290; Earnest v. Willingham, 10 Cir. 1969, 406 F.2d 681, 683; *cf.* Bynum v. Connecticut Commission on Forfeited Rights, 2 Cir. 1969, 410 F.2d 173, 177. See also Williams v. City of Oklahoma City, 395 U.S. 458, 89 S.Ct. 1818, 23 L.Ed.2d 440 [June 9, 1969]. The instant case involves neither habeas corpus nor coercive incarceration.[19] Nevertheless, I feel that this is another instance where the courts should carve out an exception to the doctrine that *Griffin* applies only in criminal cases. *See* note 18.

I am impressed with the analytical approach of Justice Sobel in Jeffreys v. Jeffreys, 58 Misc.2d 1045, 296 N.Y.S.2d 74, 87 (Sup.Ct.1968). He found:

"Marriage is clearly marked with the public interest. In this State, a marriage cannot be dissolved except by 'due judicial proceedings' (N.Y. Const. Art. I Section 9). We have erected by statute a money hurdle to such dissolution by requiring in many circumstances the service of a summons by publication (CPLR 308(4), 315, 316, 317; Domestic Relations Law § 221). This hurdle is an effective barrier to Mrs. Jeffreys' access to the courts. The loss of access to the courts in an action for divorce is a right of substantial magnitude when only through the courts may redress or relief be obtained. Such a right is, it seems to me, as basic as Griffin's right to appeal and Mrs. Harper's right to vote. It is manifestly discriminatory under *Griffin* standards to deprive Mrs. Jeffreys of that right while affording it to others with money.

"I hold that she has been denied the equal protection of the laws guaranteed to her by the State and Federal Constitutions."

Likewise, I find significant the fact that Florida is deeply involved in this proceeding. The State is most assuredly interested in terms of finance to the extent that Dawn Elaine Brown does not become a public charge as a result of a poor parental relationship. Also, the State is interested in Dawn Elaine's future conduct to the extent that she does not engage in punishable antisocial conduct. And, finally, Florida surely regards as a matter of public import any severance of the parental relationship. *See generally* 1A F.S.A. §§ 39.01, 39.11 (1967) (Power to separate children from parents). Just as New York's concern with the marital relationship distinguishes *Jeffreys* from other civil actions, I feel that Florida's

---

issue of propriety of the parties, however, is the Florida statute which specifically allows the "child * * * affected by an order of the juvenile court" to prose-

cute such an appeal. 1A F.S.A. § 39.14 (1) (1969 Supp., p. 97).

19. *But cf.* fn. 10.

interest in the parental relationship carves out the instant case from the class of ordinary private civil disputes.

In disregarding, for present purposes, the civil-criminal distinction in *Griffin*-type cases, another approach is also helpful. The judiciary should look to the gravity of the rights at stake in employing the Fourteenth Amendment to alleviate monetary discriminations. *See* Note, Right to Counsel in Civil Litigation, 66 Col.L.Rev. 1322 (1966). I find the civil-criminal distinction arbitrary in terms of the importance of rights at issue in this case. *Infra,* note 18. We are dealing here with rights just as fundamental as a man's personal liberty (which is at stake in a criminal proceeding which could result in incarceration). *Cf.* Representation in Child Neglect Cases: Are Parents Neglected? 4 Col.J. of Law and Soc.Probs. 230, 250–51 (1968). Indeed, there could hardly be a better case for Fourteenth Amendment protection than this one. The formation of a young girl's life habits are at stake. The makeup of her personality will be determined for all time during the next few years. A well-founded parental relationship for this girl is a necessity. *See* C. Foote, R. Levy, F. Sander, Cases and Materials on Family Law, p. 851 (1966). Dawn Elaine's right to a just determination of her best interests is fully as important as a person's right to be free from incarceration by the State. Thus, rather than open the floodgates for all forms of civil litigation by indigents at State expense, we should merely exercise the vigilance over human liberty which is the special duty of the judiciary. *Cf.* United States v. Carolene Products Co., 1938, 304 U.S. 144, 152, n. 4, 58 S.Ct. 778, 82 L.Ed. 1234.[20]

Finally, I note the expanding protection for juveniles who become participants in the judicial process, whether in a civil or a criminal proceeding. *See* In re Gault, 1967, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527. *Cf.* In re Whittington, 1968, 391 U.S. 341, 88 S.Ct. 1507, 20 L.Ed.2d 625. While I am fully cognizant of the gravity of a juvenile's being declared delinquent, I feel that the important liberties at stake in this case require the same degree of judicial vigilance. A change of parental bondage during the tender years is hardly less upsetting of one's pattern of life than is the denomination and possible commitment of a child as a "juvenile delinquent." *See generally* Foote, Levy and Sander, *supra.*

Judicial inquiry under the Equal Protection Clause usually necessitates an assessment of the reasonableness of the classification in terms of the legislative purpose. McLaughlin v. Florida, 1964, 379 U.S. 184, 191, 85 S.Ct. 283, 13 L.Ed.2d 222. Florida's statutory scheme allows indigents in child custody cases an inferior right of appeal. Appellants argue that such relegation to an inferior position is inconsistent with the Equal Protection Clause.

In the context of a criminal case, where the Supreme Court held that free transcripts should be provided for persons whose proverty precluded them from sending to the State appellate court a record sufficient for review, Mr. Justice Goldberg reiterated the command of the Equal Protection Clause with regard to review by appellate courts:

"In all cases the duty of the State is to provide the indigent as adequate and effective an appellate review as that given appellants with funds— the State must provide the indigent defendant with means of presenting his contentions to the appellate court which are as good as those available

---

20. It is interesting to note the developments of the right to counsel in criminal cases. *See* Powell v. Alabama, 1932, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158; Betts v. Brady, 1942, 316 U.S. 455, 62 S.Ct. 1252, 86 L.Ed. 1595; Gideon v. Wainwright, 1963, 372 U.S. 335, 83 S.Ct.

792, 9 L.Ed.2d 799. *Cf.* James and Miller v. Headley, 5 Cir. 1969, 410 F.2d 325. The development of indigent's rights to civil court access under the Fourteenth Amendment may well follow the same path of gradualistic inclusion.

to a non-indigent defendant with similar contentions."

Draper v. Washington, 1963, 372 U.S. 487, 496, 83 S.Ct. 774, 779, 9 L.Ed.2d 899. *See also* Griffin v. Illinois, *supra;* Eskridge v. Washington State Board of Prison Terms and Paroles, 1958, 357 U.S. 214, 78 S.Ct. 1061, 2 L.Ed.2d 1269. *Cf.* Douglas v. California, 1963, 372 U.S. 353, 355–357, 83 S.Ct. 814, 9 L.Ed.2d 811. This command, couched in the rhetoric of equal protection is squarely applicable to this case. In order for plaintiffs to have "complete and effective appellate review" of the juvenile court's decision, plaintiffs must be given a transcript of the original proceedings. *Cf.* Entsminger v. Iowa, 1967, 386 U.S. 748, 752, 87 S.Ct. 1402, 18 L.Ed.2d 501; In re Munkelwitz Hennepin County Welfare Dept., 280 Minn. 377, 159 N.W.2d 402 (1968) (statutory construction). Florida cannot, consistent with equal protection of the laws, allow a more effective child custody appeal only to those aggrieved parties who are wealthy enough to afford costly transcripts. In effect, Florida classifies appellants on the basis of wealth, and even the most restrained review of this classification would adjudge it unconstitutional. *See* Note, Developments in the Law—Equal Protection, 82 Harv.L.Rev. 1065, 1077 (1969). Such a classification seems wholly unrelated to the legislative purpose of providing appeals from the Juvenile and Domestic Relations Court. Surely one could not rationally contend that an "indigent's (appeal) will be less meritorious than those of other defendants." Burns v. Ohio, 1959, 360 U.S. 252, 258, 79 S.Ct. 1164, 1168, 3 L.Ed.2d 1209.

My conclusion of unreasonable discrimination is also grounded upon the notion that we are dealing here with "defining conditions of citizenship."

*See* Note, The Indigent's Right to Counsel in Civil Cases, 76 Yale L.J. 545, 550 (1967); *cf.* Harper v. Virginia Board of Elections, 1966, 383 U.S. 663, 670, 86 S.Ct. 1079, 16 L.Ed.2d 169.[21] In addition, although I am fully cognizant of the special historical reasons which render racial classifications constitutionally suspect under the Fourteenth, I note that the Supreme Court has recently viewed monetary classifications in the same scrutinous fashion. *See* Shapiro v. Thompson, 1969, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600; McDonald v. Board of Election Com'rs, 394 U.S. 802, 89 S.Ct. 1404, 22 L.Ed.2d 739. The fundamental nature of these rights which, in the context of the instant case, are so closely akin to the personal liberty at stake in case of coercive incarceration may render constitutionally impermissible otherwise rational discriminations by the state based solely on a man's financial status. Viewing this suspect classification in light of the fact situation where access to the court in a case involving personal liberty is at stake, I would hold that Florida's appellate rules have been applied to appellants so as to deny them the equal protection of the laws. *Cf.* Smith v. Bennett, 1961, 365 U.S. 708, 712, 81 S.Ct. 895, 6 L.Ed.2d 39; Roberts v. La Vallee, 1967, 389 U.S. 40, 42, 88 S.Ct. 194, 19 L.Ed.2d 41; Little v. Turner, 10 Cir. 1968, 402 F.2d 495; Jeffreys v. Jeffreys, *supra.*

I would, therefore, reverse the district court on the merits and remand the case to that court for entry of an order requiring that a transcript of testimony free of charge be provided to appellants within such time as to afford appellants a complete and effective right of appeal. Any other disposition would leave mother and child without a full review of what is in the child's best

---

21. Although it is arguable that this analysis smacks of due process, I feel that scrutiny of legislative classifications under the Equal Protection Clause must be especially severe where the rights at stake are fundamental ones traditionally within the sphere of judicial protection. Thus, equal protection analysis necessarily includes an assessment of the rights and privileges at issue which resembles to some extent the assessments made in a due process inquiry.

interests—solely on the basis of their indigency.

Before JOHN R. BROWN, Chief Judge, WISDOM, GEWIN, BELL, THORNBERRY, COLEMAN, GOLDBERG, AINSWORTH, GODBOLD, DYER, SIMPSON, MORGAN and CARSWELL, Circuit Judges.

## ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC

PER CURIAM:

The Petition for Rehearing is denied and the Court having been polled at the request of one of the members of the Court and a majority of the Circuit Judges who are in regular active service not having voted in favor of it, (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the Petition for Rehearing En Banc is also denied.

RIVES, Circuit Judge (dissenting):

I dissent from the Court's failure to grant the petition for rehearing.